### York Co. Mut. Fire Ins. Co. *vs.* Richard A. Bowden.

Where the charter of a mutual insurance company provides that the deposit note shall be payable in part, or in whole, when the directors deem the same requisite for the "payment of losses or other expenses," and the remainder, after deducting such payment, to be relinquished to the signer; that every member "shall pay his proportion of all losses and expenses accruing in and to the class in which his property is embraced;" and that the policy shall create a lien upon the property insured, for the security of the deposit note, "and the cost which may accrue in collecting the same;" an assessment of ninety-five per cent additional to the actual losses in a certain class, upon the premium notes in such class to "meet estimated bad debts, interest, expenses, and costs of collection," is illegal.

On report.

Assumpsit on a premium note.

The case is sufficiently stated in the opinion.

*Howard & Cleaves*, for the plaintiffs.

The assessment was duly ordered and made. Act of Inc., § 209. *Penob. & Ken. R. R. Co.* v. *Dunn*, 39 Maine, 598. *Jones* v. *Sisson*, 6 Gray, 288. *New Eng. F. Ins. Co.* v. *Belknap*, 9 Cush. 140. *Peoples Equit. M. Fire Ins. Co.* v. *Babbitt*, 7 Allen, 235.

This kind of assessment is necessary in mutual companies.

It is presumed that the directors acted in good faith. They have determined that the estimated amounts were reasonable, just, necessary. Their judgment and determination are conclusive until impeached. What amount was estimated for "bad debts," for "interest," for "expenses," or for "cost of collection," does not appear in the objection. Who can say either item was excessive?

Tapley, J. This is an action upon a note given for an insurance premium. The note is payable in such portions and at such times as the directors of said company may, agreeably to their act of incorporation and by-laws, require.

Upon the 10th day of April, 1861, the directors ordered an as-

sessment upon the note of $69.07, and this suit is to enforce the payment of that sum.

The defendant contends that this assessment is void by reason of the unauthorized acts of the directors apparent from their own records.

By the terms of the plaintiffs' charter every member of said company shall be, and hereby is, bound and obliged to pay his proportion of all losses and expenses happening or accruing in and to the class in which his property is embraced (sec. 7) ; and every person who shall become a member of the company, by effecting an insurance therein, shall, before he receives his policy, deposit his note for such sum of money as may be determined by the directors, a part, not exceeding ten per cent, of which note shall be immediately paid for the purpose of discharging the incidental expenses of the institution, and the remainder of said deposit note shall be payable in part, or the whole, at any time when the directors shall deem the same requisite for the payment of losses or other expenses (sec. 6). All buildings and the land upon which they stand, and the property insured therein, shall be held by the company for any deposit note, which they may hold, of the member for whom they have insured ; and the policy of insurance to any member of said company upon his buildings or other property shall, of itself, create a lien upon the same for the sum of such deposit note, and the cost which may accrue collecting the same, and such lien shall continue during the existence of said policy, and the liability of the assessed thereon, notwithstanding any transfer or alienation (sec. 7).

These provisions substantially provide for the payment of losses and the expenses of the institution in just and equal proportions by the members, according to the amount insured and character of the risk. To secure this result a note is required, and the property itself held as a security for the payment, in addition to a cash premium to meet the incidental expenses of the institution.

Under these provisions of the charter the assessment in question was made. From the records it appears that this class had suffered

losses amounting to $11,730.50, for which an assessment upon the notes of that class was ordered. Having thus provided for the payment of these losses, which are stated in dollars and cents, not only in the aggregate but in the detail of each individual loss, its date and amount and to whom payable, the directors then proceed to " vote to assess ninety-five per cent additional upon said sums, on said premium notes in said third class of said company to meet estimated bad debts, interest, expenses, and costs of collection;" and the assessment in question was made to cover not only the actual existing losses specified, but also the ninety-five per cent for estimated bad debts, interest, expenses, and costs of collection. We think such an assessment cannot be sustained. There is no authority given by the charter and by-laws to the directors to make such an one. The provisions of law before referred to contemplate the assessment of the notes to meet actual existing liabilities in just proportions, according to the amounts and character of the several risks. To ascertain these proportions, the amounts of the several liabilities must be ascertained and determined. One class cannot be called upon to pay for the losses and expenses of another class. What each class is chargeable with must be ascertained, whether it be of a loss of one character or of another, and what each note, in the same class, is chargeable with, must also be ascertained. No authority is conferred upon the directors to estimate losses which have and may occur, and estimate losses which have and may accrue, and join them together with an estimated amount of interest not accrued, but as yet only possibly necessary. As before remarked, the assessment is only to meet existing liabilities,—ascertained liabilities.

If made to meet possible contingencies, for which if they did occur they would be properly chargeable, a fund might be raised which might never be called for, inasmuch as the estimated and anticipated losses may never happen.

There can be no difficulty in ascertaining the liabilities after they have accrued; there may be a difficulty in so doing before. The argument of convenience is entitled to no consideration. The di-

rectors act under specific powers and must act in obedience to them.

To sustain such an assessment might do great injustice to the other members of the company. It will be seen that this extraordinary overlay is by a sweeping per cent, without detail of estimate. How much for bad debts, or how much for interest, or how much for expenses of collection is not determined; but the whole is put in gross, at ninety-five per cent, and this, too, while the charter charges each piece of property with the cost which may accrue in collecting the assessment belonging to it, and gives a lien thereon to secure it (sec. 7). By such a course one piece of property is made to pay the charges properly accruing against another.

If no bad debts are actually made, what becomes of the fund raised ? If the amount estimated for interest proves to be too large, what is to be done with the surplus ?

Why may not the directors estimate the losses which may occur by fire during a given period, and make an assessment for it, as well as estimate other liabilities which may or may not accrue ?

It is quite apparent that such a course is inconsistent with the general purpose and design of the charter as well as being in conflict with some of its specific provisions.

One serious objection to such a practice is its great uncertainty in reaching the cardinal and fundamental end and aim of the institution, viz., a just and equal sharing of the losses, according to the amount insured and character of the risk. It is not even reasonably certain that such end will be thus attained. The whole basis of the overlay lies in conjecture, and unnecessarily so, for the exact amounts may be known when they accrue. Good judgment and fidelity in the execution of the trust committed to them would forbid such a course even if it could be considered within the strict letter of the charter and by-laws.

Another objection, fatal to such an assessment, is the fact that it is in direct violation of some of the material provisions of the charter. We have seen that provision is made that each note shall pay the expense of collecting the assessments upon it, and, to secure this

end, a lien is created upon the property not only to secure the note, but the costs of collecting the assessments thereon. This general overlay for estimated expenses of the collection of the assessment in the aggregate upon this class, imposes upon the policy holders an unequal share of the expenses thus accruing, according to the amounts of their several notes ; and thus the delinquent is released from any greater expense than those who pay upon first call, and those who are prompt in the discharge of their liabilities are made to contribute to the expense of collecting from those who seek to avoid paying their just share of the losses.

This objection is equally fatal if we assume that good judgment and good faith was exercised in fixing the amount necessary to be expended in that way. We are, therefore, of the opinion, that the assessment is invalid, and there must be

*Judgment for the defendant.*

WALTON, DICKERSON, BARROWS, and DANFORTH, JJ., concurred.