## Palmyra Insurance Company v. Edward B. Knight, Jr.

1. INSURANCE—*Assessment Unpaid—Policy Suspended.*—If an assessment made upon its members by a mutual insurance company is not paid, then the policy of the delinquent member is suspended, provided the assessment was valid and binding upon such member; but it is otherwise if the assessment is invalid and creates no right of action against such member.

2. SAME—*Power of Mutual Companies to Make Assessments for Anticipated Losses.*—The power of a mutual insurance company to make and enforce an assessment to create a fund for the payment of antici-

pated losses which had not accrued, but which would probably accrue in the future, must be found in the charter and by-laws of such company or it does not exist.

3. SAME—*Defense of Unpaid Assessments—Burden of Proof.*—When a mutual insurance company relies upon the failure of the insured to pay his assessments and a consequent suspension of his policy as a defense to an action upon it, the company can only succeed by showing an assessment in accordance with the contract under the rules of the company governing the same.

4. SAME—*Assessments by Custom.*—A custom of making assessments on the part of the managers of a mutual insurance company does not operate to confer a power to make such assessments. Mere usurpations of power can not create a right for the future, and the acquiescence by payment does not prevent his objecting to a continuance of the practice.

Assumpsit, on a policy of insurance. Appeal from the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding. Heard in this court at the December term, 1894. Affirmed. Opinion filed May 28, 1895.

DIXON & BETHEA and A. K. TRUSDELL, attorneys for appellant, contended that the policy of the appellee was "suspended" at the time of his fire, and for that reason he has no right to recover upon it.

Section 7 of the charter provides: "If any member shall refuse or neglect to pay, as aforesaid, for the period of sixty days, his, her or their policy or policies shall become suspended until payment shall have been made, and shall, notwithstanding, be liable to said rates pursuant to his, her or their covenant or agreement."

A reading of this portion of the section would seem to indicate, without any argument, that the policy of the appellee was "suspended," providing the assessment was a legal one. N. W. G. T. M. Ass'n v. Schauss, 148 Ill. 312.

By the failure of the appellee to pay the assessment in question within sixty days after receiving notice thereof his policy was "suspended," and, on account of the fire during the time of the suspension, he could not recover upon his policy. Charter of Company, Sec. 7, Ab. 5; May on Insurance, Sec. 555, p. 691; Cove v. Iowa State Mut. Insurance Co., 18 Iowa 425; Nash v. Ins. Co., 43 Me. 343; Grand Lodge of Ill. etc. v. Besterfield, 37 Ill. App. 522; Hansen v.

Sup. Lodge of Knights of Honor, 40 Ill. App. 216; North-western Traveling Men's Asso. v. Schauss, 148 Ill. 312; Schmidt v. Modern Woodmen of Amr., 54 N. W. (Wis.) 264; Hummell's Appeal, 78 Pa. St. 320; Rood v. Ry. Pass. and Freight Mut. Benefit Asso., 31 Fed. Rep. 62.

Mutual companies, unless there is some express prohibition, have power to levy assessments for the purpose of paying future losses. Niblack on Mutual Benefit Societies, 310, 311; New Eng. Mut. Fire Ins. Co. v. Belknap, 9 Cush. 141; Kelly v. Troy Fire Insurance Co., 3 Wis. 229; 2 Biddle on Ins., Sec. 935; 16 Am. and Eng. Ency. of Law, 65; 1 Biddle on Ins., Sec. 46; Hope Mut. Fire Ins. Co. v. Weed, 28 Conn. 51.

Even if it be held that the charter of the company does not give the power to levy assessments to cover future losses, the facts in this case show that it has always been the custom of the company to make such levies; that the appellee knew of the same and acquiesced therein, and is, therefore, estopped from denying the legality of the assessment. Lawson on Usages and Customs, Secs. 223, 248; Sedgwick on Construction of Statutes, 215, 218, 219, 226; U. S. v. Ala. R. R. Company, 142 U. S. 615; Bishop on Contracts, 457; 2 Morawetz on Corp., Secs. 623, 624, 630, 633; 1 Morawetz on Corp., Sec. 498; 2 May on Insurance, Secs. 552, 554; Angell & Ames on Corp., Sec. 348; Commonwealth v. Dorchester Mut. Ins. Co., 112 Mass. 142; Citizens Mut. Ins. Co. v. Sortwell, 8 Allen 217; Bishop on Contracts, Sec. 412; 16 Am. and Eng. Ency. of Law, 44, 45; U. M. Ins. Co. v. Keyser, 32 N. H. 313; Campbell v. Merchants' Ins. Co., 37 N. H. 35; 1 Wood on Railroads, Sec. 169, Note on p. 539.

R. S. FARRAND and C. B. MORRISON, attorneys for appellee, contended that assessments, to be binding, must be properly made, and for a proper purpose, and if not, a failure to pay them will not work a forfeiture or suspension. They must be made in strict conformity with the authority given in the by-laws and charter, and the insured is only liable to pay legal assessments. Tobey, Receiver, v. Russell, 9 R. I. 58; York Co. M. Ins. Co. v. Turner, 53 Me. 226; Pacific Mut.

Ins. Co. v. Gruse, 49 Mo. 329; Niblack, Mut. Ben. Societies, Secs. 277, 279, 280; Bacon, Ben. Soc., etc., Sec. 377; May on Insurance, Secs. 67, 557; Matter of People's Mut. Eq. Fire Ins. Co., 9 Allen (Mass.) 319; Biddle on Ins., Secs. 936, 398; Underwood v. Iowa Legion of Honor, 66 Ia. 134; York Co. Mut. Fire Ins. Co. v. Borden, 57 Me. 286; Sinissippi Ins. Co. v. Taft, 26 Ind. 240.

Assessments in a mutual insurance company of a greater amount than is necessary to meet existing claims, together with reasonable allowances for expenses and failures to make collections, is invalid. People's Mut. Fire Ins. Co. v. Babbitt, 7 Allen, 236.

In making an assessment the managers act ministerially, and not judicially, and no presumption arises in favor of the regularity of the proceedings. Pac. Mut. Ins. Co. v. Guse, 49 Mo. 329; Niblack, Mut. Ben. Societies, Sec. 280; Thomas v. Whallon, 31 Barb. (N. Y.) 177; Herkimer Co. Mut. Fire Ins. Co. v. Fuller, 14 Barb. (N. Y.) 373; Am. Ins. Co. v. Schmidt, 19 Iowa 502; Niblack, Mut. Ben. Societies, Sec. 171; 16 Am. and Eng. Ency. of Law, 71.

If a policy holder makes a contract with a corporation it must govern, although he is not a stranger in a literal sense but a member of the corporation. The corporation is as to him and all other persons a different and distinct person, and the contract in all its relations is precisely the same as to him that it would be to a stranger. Willcuts v. The N. W. Mut. Life Ins. Co., 81 Ind. 305; N. E. Mut. Fire Ins. Co. v. Butler, 34 Me. 451.

Conditions in a policy that work a forfeiture must be strictly construed against the company. German Fire Ins. Co. v. J. J. Carrow et al., 21 Ill. App. 631; Aurora Fire Ins. Co. v. Eddy, 49 Ill. 106; Commercial Ins. Co. v. Robinson, 64 Ill. 265; Niagara Fire Ins. Co. v. Scammon, 100 Ill. 646; Rockford Ins. Co. v. Strong, 137 Ill. 646; May on Insurance (3d Ed.), Sec. 367.

Admitting as a matter of argument that there was a custom of the company as claimed by appellant, yet such a custom could not take the place of written by-laws, nor bind

a policy holder. Niblack, Sec. 14; May, Sec. 579 and 179; Bacon, Mut. Ben. So., Sec. 80; District Grand Lodge No. 4 v. Cohn, 20 Ill. App. 344.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellee brought this suit against appellant on a policy of insurance issued to him on his barn and its contents and other property, to recover for the loss of the barn and contents which were destroyed by fire. The policy was for $4,000 and the declaration was in assumpsit containing two special counts based thereon.

The general issue was pleaded and a stipulation was filed agreeing that any defense might be made that would be proper under any plea well pleaded. There was a trial before the court without a jury, and the defense made was that the policy was suspended at the time of the fire by the refusal or neglect of appellee to pay an assessment against him. The court found the issues for appellee and assessed his damages at $2,464.10 and judgment was entered for that amount and costs.

Defendant was organized under a special act of the legislature, passed and approved February 15, 1865, and since that time has been insuring property against fire on the mutual plan. It was decided not to issue any policies for fixed periods or terms, but the by-laws provided that each policy should be what is called perpetual. It was also provided in the by-laws that for ordinary farm risks the premium should be at the rate of $3 for each $1,000 of the amount insured, with $3 additional for expense of examination and policy, and that the liability of the assured to assessment to pay losses and expenses should be the amount of insurance named in the policy. On August 10, 1892, plaintiff signed an application for the insurance in question, which application contained this statement : " That if a policy of insurance is issued to him upon the above described property he will faithfully abide by and observe all the conditions, rules, regulations and orders of the company contained in its char-

ter and by-laws, and promptly pay, whenever called upon, his just share of the assessments made for the payment of losses by fire and lightning incurred at any time by any member of the company." The policy was issued to him acknowledging the payment of the cash premium of $15, and binding him to comply with the constitution, rules, regulations and by-laws of the corporation. He then received a copy of the charter and by-laws, and he had previously been a member of the corporation under another policy when he had a copy of such charter and by-laws. The assessments which he became bound to pay under the above contract of insurance were provided for by a provision of section 7 of the charter as follows: "And when the just demands of any insurer in said company or member thereof shall exceed the amount in its available funds on hand, such sums as shall be necessary to pay the same shall, without unnecessary delay, be assessed by the board of managers on insurance, each member to pay in proportion to the amount he has insured and publish the same; and all and every of the members of the company shall pay into the hands of the treasurer his, her or their proportionable rates, within thirty days after such publication aforesaid; and if any member shall refuse or neglect to pay as aforesaid, for the period of sixty days, his, her or their policy shall become suspended until payment shall have been made, and shall, notwithstanding, be liable to said rates pursuant to his, her or their covenant or agreement."

On April 25, 1893, the board of managers of defendant met, and it appeared that there was a balance due on a loss of H. B. Johnson of $447, and that there was due the secretary for money advanced by him $643.08, making the total existing liability of defendant $1,090.08. The board of managers then ordered an assessment of one-fourth of one per cent upon its policies. The assessment was extended June 8, 1893, and notice was mailed to each member. Defendant at that time had property insured to the amount of $3,078,403 owned by over 1,500 members, and the amount realized from the assessment was $7,333.68. The assessment notice

sent to plaintiff stated that his assessment was $10 on
$4,000 of insurance to pay the loss of H. B. Johnson and to
create a surplus fund to pay future losses.   He did not pay
the assessment within sixty days, and another notice was
sent to him without avail.   He had not paid the assessment
when the fire occurred, October 18, 1893.

If the assessment so made and not paid was valid and
binding upon plaintiff, then his policy was suspended at the
time of the fire and there could be no recovery upon it.   But
if the assessment was invalid and created no right of action
against plaintiff and no duty on his part to pay it, then the
policy was not and could not be suspended for his failure to
pay, but was still in force, and the judgment was right.   The
defendant relied upon the failure of plaintiff to pay the
assessment as a suspension of his contract of insurance, and
could only succeed by showing an assessment in accordance
with the contract under the rules governing the parties.
May on Insurance, Sec. 67.

Whether the assessment was valid was the only question
in the case, and this depended on the power or want of
power of defendant to make and enforce an assessment to
create a fund for the payment of anticipated losses which
had not accrued, but which would probably accrue in the
future.   Defendant submitted to the court various propo-
sitions of law to the effect that the defendant had power to
make an assessment of a reasonable amount for the purpose
of providing for the payment of losses that had not al-
ready occurred, but that would, within a reasonable time
after such assessment, probably occur.   The court held
these propositions to be the law, but qualified the ninth
proposition by adding to it that a levy of about $8,000 was an
assessment not reasonably necessary to be made when the
evidence showed that the losses then accrued only amounted
to about $1,090.   The tenth proposition stated that there
was no express provision in the charter against assessments
to pay future losses, and that proposition was modified so
as to hold that while there was no express provision against
the making of such assessments, it was necessarily implied,

and that the only power in the defendant to levy assessments was that which was given to make assessments to pay losses already incurred.

It is objected that the court was wrong in the conclusion that the assessment was not reasonable in amount, as indicated by the modification of the ninth proposition, and hold an erroneous view of the law in modifying the tenth proposition so as to hold that there was no right to levy an assessment to pay future losses at all. No provision of the charter, by-laws or contract with plaintiff is pointed out which confers power to make an assessment for possible or probable losses not yet incurred. The only provisions touching accumulated funds relate to the employment and investment of them. By such provisions and conferring authority to make an assessment when the demands of a member should exceed the amount in available funds on hand, it was evidently expected that defendant might have funds on hand, but such funds might arise from cash premiums, and under any system of making assessments there might be a surplus to turn into such a fund. No provision for creating such a fund by assessment was included in the charter, but the authority there given was for the purpose of paying just existing demands. The reason assigned by counsel for construing the charter to authorize an assessment to create a surplus fund, is that defendant under such a rule could do business better and more economically for its members than by making assessments to pay existing demands. It was proved that the business which began in a farming community in 1865 had grown to be very large; that the number of losses for the year ending June, 1893, was thirty-one; that the number had approached that figure for several years; that these losses ranged from $5 up to $2,000 each; that losses must be paid within ninety days, and that an assessment cost $125. At the rate that losses had occurred the amount realized from this assessment would last about a year and it did last longer than that. It would be necessary to have several assessments each year so as to pay losses in ninety days, and the expense

of making them would probably exceed the interest on a surplus fund withdrawn from the members in advance, so that it would be more economical for the members to do business in the way adopted than by the method provided for in the charter. It is of course true that the charter must be construed with reference to its practical workings; but it can not, we think, be said for that reason that mere economy in administration would confer a power not contained in the charter. The power to make the assessment in question can not be. derived from the charter.

If the members of the corporation in making rules touching their relations might have provided for such assessments as this one, they failed to do so. No by-law made any such provision.

Neither did the contract of insurance with plaintiff include any agreement to pay such an assessment, and unless he was concluded in some other way he had a right to rely on his contract, which was that he should comply with the rules and regulations contained in the charter and by-laws. It is contended that he was concluded by the fact that it had been the custom of the defendant to make assessments in excess of the amount required to pay losses, and that he had paid such assessments. Previous assessments had not been limited to the amount of claims accrued, but no attempt had ever been made to create such a surplus as in this instance. It is manifest that a custom on the part of the managers to make such assessments could not operate to confer power on them to make them. Mere usurpation of power could not create a right for the future, and we think that plaintiff's acquiescence by payment would not prevent his objecting to a continuance of the practice.

As we fail to find authority to make the assessment in the charter, by-laws or contract we are constrained to hold that it did not exist. In creating a liability against plaintiff which would work a suspension of his policy, the managers must, we think, find authority in those sources, and failing such authority, could not enforce payment of their demand. Under the rule that the charter is to be construed in refer-

ence to the practical operation of the company it would not be necessary to be making constant infinitesimal assessments as soon as each petty claim accrued, but they can be made at reasonable intervals, and reasonable allowance may and should be made for expenses of collection and failure to collect. If such allowances are reasonable they will not vitiate an assessment, but it must be kept within those limits. What has been said disposes of the questions raised on the holdings of the court on propositions of law. The judgment will be affirmed.