G. A. SMITH, *Appellee*, v. THE REPUBLIC COUNTY MUTUAL FIRE INSURANCE COMPANY, *Appellant*.

No. 16,572.

SYLLABUS BY THE COURT.

1. MUTUAL INSURANCE—*Fire, Lightning and Tornado—Assessment on Premium Notes*. Under the act relating to the organization and control of mutual fire, lightning and tornado insurance companies (Gen. Stat. 1909, art. 5, ch. 55) the liability of a member to assessment on his premium note extends to the following purposes, and no other: First, to maintain a reserve fund equal to ten per cent of all the premium notes in force (Gen. Stat. 1909, § 4227); second, to pay losses which may accrue, and defray expenses (Gen. Stat. 1909, § 4216).

2. —— *Illegal Assessment*. An assessment of premium notes not necessary to maintain the reserve fund at ten per cent of the premium notes in force and not necessary to pay losses or expenses, but levied merely for purposes to be developed in the future, is illegal.

3. —— *Same*. A company with $4,000,000 at risk held notes to the amount of $85,463. It held mortgage loans to the amount of $20,455, $8546 of which constituted its reserve fund. It had cash on hand in the sum of $4011. Its liabilities were slightly in excess of $600. *Held*, an assessment of the premium notes under those conditions was illegal.

4. —— *Guaranty Fund—Assessments*. Section 2 of chapter 273 of the Laws of 1905 (Gen. Stat. 1909, § 4241), authorizing mutual companies having certain qualifications to establish a guaranty fund and to increase the same from time to time, does not permit the assessment of premium notes directly for such purposes.

5. ——— *Contract—By-laws—Signature.* The assignee of a
policy holder who signed an application agreeing to accept his
policy subject to the by-laws of the company, a copy of which
application was attached to the policy when issued, can not
be heard to say that the by-laws are not a part of the contract,
although the copy of the by-laws attached to the policy was
not signed in accordance with section 4226 of the General Stat-
utes of 1909.

Appeal from Jewell district court; RICHARD M.
PICKLER, judge. Opinion filed June 11, 1910. Modified.

*Hugh Alexander,* and *S. H. Allen,* for the appellant.
*Robert C. Postlethwaite,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff is the assignee of a policy
issued by the defendant, a mutual fire, lightning and
tornado insurance company organized under the laws
of this state. Having suffered a loss, the plaintiff
brought suit on the policy. The defense was that he
had failed to pay an assessment on the premium note
given by his assignor, and consequently that he had for-
feited his right to indemnity. He replied that the
assessment was illegal. The statute (Laws 1885, ch.
132, § 15; Gen. Stat. 1909, § 4221) authorized the com-
pany to adopt a by-law excluding members from the
benefit of their insurance while in default in payment
of any assessment legally made. The claimed forfeit-
ure was under a by-law framed in the language of the
statute.

The premium note which was assessed contained the
following stipulation: "It is further expressly agreed
that this note is liable only for the losses and expenses
incurred by said company." This provision was in-
serted to comply with section 4216 of the General Stat-
utes of 1909 (Laws 1885, ch. 132, § 9), which reads as
follows:

"In companies organized under the provisions of this

act, all notes taken by them in consideration of premiums on their policies shall be assessable and collectable, in part or in whole, for the purpose of paying any loss or losses which may accrue, or defray expenses as provided in the charter and by-laws of the company, and for no other purpose whatever."

The trial court found that the assessment was not made to pay losses incurred or expenses, but for purposes to be developed in the future, and that such was the fact is not disputed. This being true, the assessment violated the statute and violated the contract embodied in the premium note.

It is argued that the directors of the company were authorized on business principles to accumulate a surplus of ready funds to meet contingencies in the company's affairs. The legislature covered that subject by section 21 of chapter 132 of the Laws of 1885 (Gen. Stat. 1909, § 4227), which reads as follows:

"A reserve fund equal to ten per centum of all the premium notes in force shall be set apart and maintained out of the cash receipts of the company. And whenever the cash in the hands of the treasurer of any such company, not included in the reserve fund, is insufficient to pay any loss that may accrue, then such deficiency shall be taken from the reserve fund, but such reserve fund shall not be reduced below one-half until an assessment shall be made upon the premium notes held by the company, sufficient to fully reimburse the reserve fund. And any such diminution of the reserve fund shall be held to be a liability to be provided for by assessment on the premium notes. Such part of the reserve fund of the company as is not needed for immediate use of the company shall be invested as directed by the directors, in such securities as other insurance companies organized in this state are by law authorized to make investments in."

Without this legislative authority assessments to create a reserve fund would be illegal. The theory of organizations of this kind is mutual insurance at cost, and not the building up of a financial institution, with

accumulations of capital and income and profits. The money remains in the pockets of the members until needed for the purpose for which the company exists. —the payment of losses. It is then called out by assessments, and any deviation from this plan violates the principle upon which the corporation is founded. In practice it is found desirable to have always on hand a fund with which to meet losses promptly, and so the legislature provided for a limited reserve. In the judgment of the legislature ten per cent of the amount of the premium notes in force was sufficient. This provision must be read, however, in connection with the positive prohibition upon assessments for any purpose whatever except to pay losses and expenses. When so read the liability of a member to assessment on his premium note extends to the following purposes, and no other: First, to maintain the ten per cent reserve fund unimpaired; second, to pay losses which may accrue and expenses. It is impossible to calculate with accuracy the precise sum an assessment will produce, and the percentage of the assessment may be high enough to insure the collection of the needed amount. If a surplus result it will not be illegal, if in making the calculation the purpose of the statute was adhered to. Beyond this the managers of the company have no discretion.

When the assessment in question was made the company had been in business many years, had over $4,000,000 at risk, and held premium notes in force to the amount of $85,463. It held mortgage loans to the amount of $20,455, much more than double the statutory reserve. Besides this, it had cash in bank and in the treasurer's hands to the amount of $4011, and other assets of the value of $150. Altogether it had available for the payment of losses and expenses approximately the sum of $16,000, almost enough for two ten per cent assessments, over and above the full reserve required by law. Its liabilities were but a trifle

over $600. Consequently the assessment can not be justified.

In 1905 the legislature extended the authority to create a reserve by authorizing mutual companies which have been in business not less than two years, which have at least $1,000,000 at risk, and which have premium notes amounting to not less than $25,000, to establish guaranty funds. The statute reads as follows:

"Any such insurance company may create such a guarantee fund by setting apart not more than fifty per cent of the excess of its funds over and above the ten per centum reserve required by law and the amount of all current liabilities for losses and expenses, and may increase such fund from time to time out of its revenue over and above such reserve and liabilities, and such fund shall be invested in mortgages on real estate worth at least double the amount loaned thereon, or in the bonds of any county, school district or incorporated city issued under the laws of this state at their market value, or in United States or state bonds at their market value. The guarantee fund of mutual companies shall be liable for the claims against the company only after all other resources have been exhausted." (Laws 1905, ch. 273, § 2; Gen. Stat. 1909, § 4241.)

This statute must, of course, be construed with those to which it is related. So considered, it appears that a guaranty fund may be created from initial cash payments, from surplus money resulting from lawful assessments to maintain the reserve and to pay losses and expenses, from interest on the invested reserve, and perhaps from some other sources, all contributing to produce an accumulation of funds in the treasury which, at a given time, may not be necessary to recruit the reserve or pay losses or expenses. But no authority is given to levy a direct guaranty fund assessment. If it had been the desire of the defendant company to create a guaranty fund, it might have used for the purpose as much as fifty per cent of the

large excess of funds it possessed above its ten per cent reserve and current liabilities. It had no right to make a special assessment for such purpose. But, if the power to do so had existed, the finding of fact is conclusive that the assessment in question was not levied to that end. In no event, therefore, can the company defend its course under the guaranty fund statute.

Counsel for the defendant say that the plan of insurance outlined above is narrow, crude and archaic. If so the court can not amend it. The legislature adopted the scheme and the legislature must liberalize, perfect and modernize it. Thus far the legislature has adhered quite steadfastly to the notion of pure mutual insurance. For twenty years the statute of 1885 remained altogether unchanged, and the guaranty fund act of 1905 departs but little from the original theory. Manifestly the court can not intervene and grant to ambitious insurance managers a discretion over the finances of their companies which the legislature persistently withholds.

Section 4226 of the General Statutes of 1909 (Laws 1885, ch. 132, § 20) contains the following provision:

"Every policy issued shall have attached thereto a printed copy of the note and application, also a printed copy of the by-laws and regulations of the company, which shall be signed by the president and secretary of the company and the insured, and shall become a part of the contract between the insurer and the insured."

The copy of the by-laws attached to the policy was signed by the president and secretary of the company, but the insured neglected to affix his signature. The by-laws contained the following provision:

"There shall not be more than three thousand dollars taken in one risk, and in no case to exceed two-thirds of the value of the building insured, including the insurance by other companies. In case of double insurance, this company will only pay its ratable proportion of two-thirds of the value of the property."

There. was concurrent insurance on the property when it was destroyed, and such insurance had been paid before the present suit was instituted. The trial court held that the by-laws did not become a part of the contract because they were not signed as the law provides, and computed the amount of recovery accordingly. The application for insurance was duly signed, and it contained an agreement to accept the policy to be issued, subject to the by-laws of the company. A copy of the application showing the signature thereto accompanied the policy. Under these circumstances neither the original policy holder nor his assignee could keep the policy and avoid the by-laws.

The case of *Insurance Co. v. Bank of Blue Mound,* 48 Kan. 393, is cited in support of the trial court's action. The opinion rendered in that case is not entirely persuasive, but the soundness of the decision need not be determined, since it does not appear that a signed application agreeing to be bound by the by-laws was taken and that a copy of such application was attached to the policy.

Other claims of error are unsubstantial. The judgment will be modified by computing the indemnity according to the by-laws. As modified, the judgment is affirmed. The costs are divided.