RUDOLPH H. HOBZA, APPELLEE, V. STATE FARMERS INSURANCE COMPANY OF OMAHA, APPELLANT.

FILED JANUARY 4, 1934. No. 28670.

*Arthur F. Mullen* and *Paul P. Massey*, for appellant.

*Dowling & Thielen, contra.*

Heard before GOOD and EBERLY, JJ., and MESSMORE, RAPER and YEAGER, District Judges.

EBERLY, J.

This is an action at law upon a "domestic assessment association" policy bearing date August 24, 1931, issued by the defendant, State Farmers Insurance Company of Omaha, to the plaintiff, Rudolph H. Hobza, insuring the latter against loss or damage to the property described therein by fire, lightning, tornado and wind. On November 15, 1931, certain property described in this policy was completely destroyed by fire. This action was instituted to recover the loss and damage thus caused. The defendant interposed as its defense the contention that under the by-laws constituting a part of the insurance contract an assessment had been levied upon the insured which became due and payable October 1, 1931, and de-

linquent November 1, 1931, and plaintiff having utterly failed to pay the same, the policy ceased to be enforceable thereafter, and was in that condition at the time the property was destroyed. A jury was waived by stipulation and the cause tried on the merits to the court, and judgment was entered for plaintiff. Defendant appeals.

The evidence clearly establishes as a fact that the assessment payable October 1, 1931, was unpaid on November 15, 1931, when the loss occurred. But plaintiff challenges the validity of this assessment as being in excess of the limitation upon assessments provided in said policy, and contends that the legal effect of the default of plaintiff in the payment of this assessment on or before November 1, 1931, was waived by the defendant as the result of the following transaction: On November 5 the plaintiff mailed to the defendant his check for $27.15, drawn on a bank therein named, the same being the amount of the assessment. It seems that the record justifies the inference that this check was duly indorsed by the insurance company and transmitted in due course of business to the drawee bank named therein, where payment was refused and this instrument was thereupon returned because of "insufficient funds." The insurance company, it appears, had credited the check as payment of this assessment payable October 1, the entry being made on November 8, 1931. On the return to it of this check, unpaid and dishonored, it had "charged it back" on November 14, 1931. On January 2, 1932, the plaintiff evidently requested the return of this dishonored check, which was refused on January 6, 1932, the reason therefor, as stated by the secretary of the company, being: "We cannot return this check until an equivalent amount is received, as it is the only evidence we would have for the state examiner, as to why we made this charge off in the journal."

But the defendant also introduced evidence from which the following facts may be justly inferred: Hobza became a member of the State Farmers Insurance Company

of Omaha, Nebraska, in October, 1924. At that time he paid as "an advance assessment" the sum then required by section 1, art. V of defendant's by-laws; and October 1 has been treated as his "assessment date" since his membership in the company was obtained. Thereafter at a regular meeting held on the first Thursday after the second Monday in January, 1925, and on a like date in each subsequent January of the years 1926, 1927, 1928, 1929, 1930, 1931, there was levied by the board of directors an annual assessment in the sum of $2\frac{1}{2}$ mills on the amount of insurance carried by plaintiff. These annual assessments were paid by plaintiff excepting only the assessment made in January, 1931. The failure to pay the assessment last referred to constitutes the entire basis of defendant's denial of plaintiff's claim. The actual loss of the property by fire is unquestioned.

Naturally the first question presented for consideration is the plaintiff's challenge to the validity of the assessment. It appears that the insurance company in this litigation may be properly termed a "domestic assessment association." An "assessment association," as defined by statute, "is one that meets its losses and expenses from assessment levied upon its members." Comp. St. 1929, sec. 44-102. See *Western Life & Accident Co. v. State Insurance Board,* 101 Neb. 152.

The fact renders controlling, so far as applicable, the sections of our insurance code pertaining to assessment associations, thereby including section 44-402, also sections 44-901 to 44-911, inclusive, Comp. St. 1929. These provisions *in pari materia* are to be construed together. *In re Estate of Mathews, ante,* p. 737.

In section 44-402, Comp. St. 1929, we find the provision: "Any assessment association organized to insure property may, in its by-laws, limit the liability of its members for assessment * * * to" a rate "which upon dwelling-houses and farm properties insured against loss by fire and lightning shall not be less than one-half of one per cent. per year after the first assessment. If the amount col-

lected in any one year, including the amount in the contingent funds, be insufficient to pay all losses sustained and expenses incurred during that year, then the members sustaining losses shall receive their proportionate share of such funds in full satisfaction of their losses."

Section 44-908, Comp. St. 1929, provides for, and authorizes, this "first assessment" which is collected at the inception of each insurance contract as referred to in section 44-402. This is in turn the foundation of the "contingency fund." The statutory plan thus evidenced contains the further provision: "Any diminution of the contingency fund. (by payments, expenses, etc.) shall be a liability to be provided for by the next assessment." Comp. St. 1929, sec. 44-909.

By section 44-902, Comp. St. 1929, the right of assessment by the company is limited to a method which will secure for each member an assessment in "proper proportion to his risk" and not in excess of such member's "*pro rata* amount" of his "liability for losses and his share of the expenses," subject of course to the further limitation already referred to.

Section 44-903, Comp. St. 1929, provides: "No assessment shall be made on a member for liability occurring prior to his membership."

Section 44-902, Comp. St. 1929, also provides: "All assessments shall be made by the board of directors unless otherwise provided in the articles of association (incorporation.)."

The articles of incorporation (or association) of this company provide: "The board of directors shall * * * Fourth, levy assessments." (Art. VII, sec. 2.)

Two inescapable conclusions are supported by a fair construction of all the statutory provisions above referred to, considered in reference to the facts disclosed in the record in the instant case, viz., assessments must be levied by the board of directors subject to the limitations expressed, which are to be construed as on an annual basis, and can only be levied for losses actually accrued at or

prior to the date of the assessment levied; and future anticipated losses or expenses may not be covered by assessments. Indeed, this is the undoubted rule in assessment associations in the absence of statute or express membership contract to the contrary.

"But generally the authority of the directors to make assessments to pay losses and expenses, however broad the language of the provision conferring it, is not absolute. It depends upon the contingency of the happening of the losses and expenses to which the persons assessed are liable to contribute, and which have been duly ascertained by the directors and necessitate a resort to an assessment." 32 C. J. 1216. And this power to levy assessments may not ordinarily be delegated. 32 C. J. 1215.

In other words, in view of the language embodied in our controlling statute, the articles of incorporation and the by-laws before us, the power of this company to levy assessments is strictly limited to the amount of the losses sustained and unpaid, and the actual expenses incurred, at the time the assessment is made. *Farmers Mutual Fire Ins. Co. v. Knight,* 162 Ill. 470, affirming 59 Ill. App. 274; *Vandalia Mutual County Fire Ins. Co. v. Peasley,* 84 Ill. App. 138; *Sinnissippi Ins. Co. v. Farris,* 26 Ind. 342; *Sinnissippi Ins. Co. v. Wheeler,* 26 Ind. 336; *Sinnissippi Ins. Co. v. Taft,* 26 Ind. 240; *Smith v. Republic County Mutual Fire Ins. Co.,* 82 Kan. 697; *York County Mutual Fire Ins. Co. v. Bowden,* 57 Me. 286; *Ibs v. Hartford Life Ins. Co.,* 121 Minn. 310; *Schultz v. Citizens Mutual Life Ins. Co.,* 59 Minn. 308; *Rosenberger, Light & Co. v. Washington Mutual Fire Ins. Co.,* 87 Pa. St. 207; *Orr v. Beaver and Toronto Mutual Fire Ins. Co.,* 26 U. C. C. P. (Ont.) 141.

At the trial the following facts were established by defendant's evidence: The membership of plaintiff in this company began in October, 1924. There was a contemporaneous payment of the initial "advance assessment." At the annual meeting of the board of directors in January following he was assessed 2½ mills. This action

was repeated at each annual January meeting of this body. Defendant's witness testifies that October, 1924, "is the date on which he (plaintiff) became a member and when assessments are made that would be the date on which he would owe it, the annual assessment." Yet, the only authority lawfully possessed by the board of directors was to levy an assessment at each of these annual meetings for the losses accrued and expenses made at and prior to the date of the levy and subsequent to plaintiff's becoming a member of the corporation.

Granting, arguendo, that such board of directors might make a valid levy covering only losses occurring and expenses incurred at the date of such assessment, and permit time of payment to be extended to October ensuing, still in the instant case such action would be valid only so far as would be necessary to cover these liabilities which accrued prior to the date of the adoption of the proper resolution by the proper corporate agency. All in excess of that necessary sum would be invalid, and the insured, having paid the same in full, would be entitled to a credit on future assessments to the extent of the invalid portion thus satisfied. This in the instant case would, in view of the lack of evidence in the record, be an indefinite amount.

But the nature of the evidence in the record tends rather to sustain the conclusion that the resolution of assessment adopted by the board of directors in January subsequent to October, 1924, which levied 2½ mills, was intended, so far as plaintiff was concerned, to cover and provide for the payment of the losses accruing and the expenses of the company made between the October preceding such meeting and the October following the same; and this was likewise true as to all subsequent resolutions of assessments passed. As already ascertained, so far as concerns losses and expenses subsequent to the date of the adoption of each of such resolutions, the actions of the board of directors were ineffective and invalid as to that portion of "each assessment year" beginning at the

date of the resolution adopted and ending on October 1 ensuing; for losses and expenses could only be provided for after they had accrued, and future liabilities of this nature could not be anticipated and provided for as thus attempted by the defendant. Neither can this court determine from the evidence in the record what portion of the assessment levied in January, 1931, if any, was for the satisfaction and discharge of existing liabilities of the company which had accrued at and prior to the adoption of the resolution providing for the same; nor can it be ascertained what portion of such assessment was invalid because attempting to provide for then nonexisting liabilities. At best, the controlling assessment before us must be deemed valid in part and invalid in part, the extent of each portion not being disclosed. The whole matter is thus uncertain and indefinite in all respects.

Forfeitures are not favored, and the burden of fairly establishing facts in justification of the same was, by the issues on which the case was tried, imposed on the defendant. This burden it failed to carry. No valid assessment in any definite amount was affirmatively established by the evidence. It affirmatively appears that the assessment relied on by the defendant was in part, possibly wholly, invalid. Therefore, there was no failure on part of the plaintiff to pay an assessment which, under the terms of the contract, would justify a denial of liability by the insurer. This situation clearly appears from defendant's evidence in the record and was patent when it finally rested its case. Questions of waiver and estoppel discussed by the parties, and matters of pleading connected therewith, were thereafter wholly unnecessary to the disposition of the case and not for further consideration.

It appears to be conceded by all parties to this litigation that the judgment as entered in the district court, viz., "in the sum of $1,765 with interest at 7 per cent. per annum from November 15, 1931, and costs in the sum of $12.50," due to a clerical error, is excessive in the sum of $40.

It follows that to the extent of $40 the judgment appealed from must be deemed erroneous in the instant case. The judgment of the district court will therefore be reversed unless the appellee files a remittitur in the sum of $40 within 30 days. In case such remittitur is filed, the judgment as originally entered in the district court, thus reduced, will be affirmed.

AFFIRMED ON CONDITION.