## GEORGE JONES *vs.* WILLIAM SISSON.

The objection, that a defence, which has been sustained by the presiding judge upon evidence introduced without objection at the trial, is not open to the defendant under his answer, cannot be taken for the first time by the plaintiff at the hearing of his exceptions to this ruling; even if the writ and answer be referred to in the exceptions as part of the case.

A provision in the charter of a foreign mutual fire insurance company, that if any member shall neglect to pay any assessment upon his deposit note, an action may be brought for the whole amount of the note, and the money thus collected shall remain in the treasury of the company, and the balance thereof, after contributing to the payment of losses and expenses, be repaid to the member, at the expiration of his policy, is not a penal statute; and a member, neglecting to pay an assessment, is liable for the full

Jones *v.* Sisson.

amount of his note in an action brought in this commonwealth, setting forth the note, the laying of the assessment, notice thereof to the defendant, his failure to pay the same, and his consequent liability to pay the whole note.

A provision in the charter of a mutual fire insurance company, that in case of default to pay an assessment upon a deposit note, "the directors may sue for and recover the full amount of said deposit note," does not prevent the bringing of such an action in the name of the treasurer of the company, when the note is made payable "to said company or their treasurer for the time being."

An assessment, laid by a mutual fire insurance company whose by-laws authorize their directors to borrow money to meet losses, and to include the sums thus borrowed, the interest thereon, and all necessary incidental expenses, in the next assessment, is not rendered invalid by including reasonable sums for interest on money borrowed, and probable losses from the failure of some of the assessed to pay their assessments, and ten per cent. for collecting assessments.

Giving personal notice of an assessment laid by a mutual fire insurance company is a sufficient publication, within the meaning of a provision in their charter, requiring an assessment to be paid "within thirty days after notice of said assessment shall have been published."

Evidence that notices of an assessment laid by a mutual fire insurance company, addressed to each of the parties assessed, were made out either by the secretary or the treasurer of the company, and that the secretary carried some of them to the post office, and the treasurer carried some, and that one of the members, when afterwards called upon for his assessment, refused to pay, on other grounds than want of notice, are sufficient evidence of notice to him of that assessment, to be submitted to the jury.

ACTION OF CONTRACT by the treasurer of the Union Mutual Fire Insurance Company, a corporation established by the laws of New Hampshire at Concord in that state, against an inhabitant of Sheffield in this county.

The declaration set forth the following note: " $50. For value received in policy No. 964, issued by the Union Mutual Fire Insurance Company on the 4th day of February 1850, I promise to pay said company, or their treasurer for the time being, the sum of fifty dollars, in such portions, and at such time or times, as the directors of said company may agreeably to their act of incorporation and by-laws require.   William Sisson, applicant."

The declaration then averred "that the directors of said company, on the 30th day of September last past, ordered an assessment of seven $\frac{35}{100}$ dollars on said note, and the same was demanded more than thirty days prior to the date hereof, and the same is unpaid, and by reason thereof, agreeably to the charter and by-laws of said company, the whole note became due and payable, and the defendant owes the plaintiff in his said capacity the amount of said note."

The only defences set up in the answer were : 1st. A denial of the making of the note ; 2d. " That the note alleged, if given, was a premium note for a policy of insurance in a mutual fire insurance company ; and no indebtedness thereon, or claim whatever, ever arose ; " 3d. That said company had no authority to insure in this commonwealth, and had not complied with any of the requirements of law in this commonwealth, so as to entitle the plaintiff to recover on the note ; and that the plaintiff had no right or authority to maintain this action ; 4th. That the note, if ever given, was obtained from the defendant by the false and fraudulent representations of the agent of the insurance company.

Trial in the court of common pleas, before *Byington*, J., who signed a bill of exceptions, in which the writ and answer were referred to as part of the case, and the remainder of which was, in substance, as follows :

The act incorporating the company gave the directors no express authority to borrow money ; and contained the following provisions :

" SECT. 3. All persons who shall at any time become interested in said company, by insuring therein, and also their respective heirs, executors, administrators and assigns, continuing to be insured therein, as hereinafter provided, shall be deemed and taken to be members thereof during the terms specified in their respective policies, and no longer, and shall at all times be concluded and bound by the provisions of this act."

" SECT. 5. The board of directors shall superintend the concerns of said company, and shall have the management of the funds and property thereof, and of all matters and things thereunto belonging, not otherwise provided for by said company." " They shall class the property to be insured into four different classes, and fix upon the different kinds of property to be embraced in each class, which classes shall severally be made as equal in regard to the risks as practicable."

" SECT. 6. Every person, who shall become a member of said company by effecting insurance therein, shall, before he receives his policy, deposit his promissory note for such sum of money

as shall be determined by the directors; a part, not exceeding ten per cent., of which note shall be immediately paid for the purpose of discharging the incidental expenses of the institution, and the remainder of said deposit note shall be payable in part or the whole, at any time when the directors shall deem the same requisite for the payment of losses or other expenses and at the expiration of the term of insurance, the said note, or such part of the same as shall remain unpaid, after deducting all losses and expenses accruing during said term, shall be relinquished and given up to the signer thereof.

" SECT. 7. Every member of said company shall be, and hereby is, bound and obliged to pay his proportion of all losses and expenses happening or accruing in and to the class in which his property is embraced."

" SECT. 9. All assessments shall be determined by the directors, and the sum to be paid by each member shall always be in proportion to the original amount of his deposit note of the class in which his property is embraced, and shall be paid to the treasurer within thirty days next after notice of said assessment shall have been published. And if any member of said company, or his legal representative, shall, for the space of thirty days after notice, neglect to pay the sum assessed upon his note, in conformity to this act, the directors may sue for and recover the whole amount of said deposit note, with costs of suit; and the money thus collected shall remain in the treasury of said company, subject to the payment of such losses and expenses as have or may thereafter accrue; and the balance, if any remain, shall be returned to the party from whom it was collected, on demand after thirty days from the expiration of the policy."

Among the by-laws of the company were the following:

"ART. 4. Notice of assessments, designating the class or classes of property insured, shall be given in such manner as the directors may order."

"ART. 7. The directors shall have power to borrow, from time to time, on the faith of the company, such sums of money as may be required to meet losses; and in making the next assess-

ment, the sums thus borrowed, the interest thereon, and all necessary incidental expenses, shall be included and assessed upon the class or classes for which the money was borrowed and appropriated."

The plaintiff proved the execution of the note; and showed by the records of the company that he was duly elected their treasurer; that the directors, on the 30th of September 1851, voted that an assessment upon the deposit notes of the class to which the defendant's policy belonged, " sufficient to raise the sum of $6,392.20 to cover losses and expenses which have accrued in said class from October 28th 1848 to October 21st 1851, be made and collected," and directed the treasurer to " send his circulars to each member of the company, containing the substance of this vote, a list of the losses, and such other matters as may be necessary to a full understanding of the subject."

The plaintiff produced a form of a circular, signed by himself as treasurer, which he contended was sent to the defendant and all others liable to this assessment, and which stated said sum of $6,392.20 to consist of certain specified losses by fire, and of these two items:

" Expense of making assessment, adjusting losses, interest

on money borrowed, and probable losses by bad debts $758.35

" Ten per cent. for collecting assessments . . . . . 568.18"

J. E. Lang, the secretary of the company, testified that, in making the assessment, no member was assessed for losses occurring before his policy was issued or after it had expired; that the two last items were included in the assessment; that there was no by-law allowing a percentage on collection; and that by "bad debts" was meant the assessments of those insured who were probably insolvent and unable to pay their assessments; but no evidence that they were unable to pay was given.

In relation to the notice to the defendant of the assessment, Lang testified that he and the treasurer made a list of all the persons, two or three thousand in number, to whom notices were to be sent, and made a notice for every individual, and

addressed it to him at his place of residence ; that the defend-
ant's name and address were on the list ; that postage was paid
on the notices sent ; that Lang carried some of the notices to
the post office, and the plaintiff carried some ; but that he had
no recollection of taking a notice to the post office for the
defendant, or for any particular person.    There was no publica
tion of the assessment, other than by this circular.

The plaintiff's attorney testified that before this action was
brought he demanded of the defendant payment of the assess-
ment, and the defendant objected to paying on˜ the ground
that he had doubts in regard to the security of the insurance
company.

Upon this evidence, the defendant objected that the plaintiff
could not recover, for the following reasons :

1st. Because this action for the whole amount of the note
was an action for a penalty created by the laws of another
state, which could not be enforced in this commonwealth.

2d.  Because this action, if it could be maintained at all, should
not have been upon the note, but in the form of a special action
on the case.

3d.  Because the action, by § 9 of the charter of the company,
must be brought by the directors, and not in the name of the
treasurer.

4th.  Because the assessment was illegal, by reason of its
including interest on money borrowed, and merely probable losses
by bad debts, and ten per cent. for collection.

5th.  Because there was no publication of the assessment, as
required by § 9 of the charter.

6th.  Because there was no evidence to go to the jury, that
the plaintiff gave the defendant any notice of the assessment,
or that the defendant had received any.

The presiding judge was of opinion that some of these
objections were well taken, and the jury, by his direction,
returned a verdict for the defendant.    The plaintiff alleged
exceptions.

*J. D. Colt,* for the plaintiff.

*I. Sumner,* for the defendant, cited, in support of the first ob-
25 *

jection, *Gale* v. *Eastman*, 7 Met. 14; *Pickering* v. *Fisk*, 6 Verm. 109; *Hunt* v. *Pownal*, 9 Verm. 411; Story Confl. §§ 619, 625; in support of the third, *Elder* v. *Bemis*, 2 Met. 599; *Osborn* v. *Danvers*, 6 Pick. 98; and of the fourth, *Marblehead Mutual Fire Ins. Co.* v. *Hayward*, 3 Gray, 208.

DEWEY, J. To the maintenance of this action, brought by the plaintiff as treasurer of the Union Mutual Fire Insurance Company, to recover the amount of a promissory note of hand given as a deposit note by the defendant upon receiving a policy of insurance from said company, the defendant has interposed various objections.

In relation to some of the grounds relied upon in the defence, and which have been the subject of our consideration, a preliminary objection was raised by the plaintiff, that they were not open to the defendant under his answer. It was admitted that this point was now taken for the first time. This objection comes too late. *Burnett* v. *Smith*, 4 Gray, 50. Where a defence to an action is taken at the trial in the court of common pleas, and evidence introduced thereon, without any question as to its being open under the answer, and the defence is sustained by the ruling of the presiding judge, the plaintiff cannot, at the hearing in this court on exceptions to that ruling, object for the first time that this defence was not open under the answer, even though the writ and answer be referred to in the bill of exceptions as a part of the case.

1. It is objected that the defendant, if liable at all, is only liable for the amount of the assessment, and not for the amount of the note; that to hold otherwise would be to enforce a penal law of New Hampshire, as the recovery would be of a penalty for neglect of duty; and that the courts of Massachusetts cannot be required to enforce penal statutes of New Hampshire.

It is true that the provision, that if any member of the company shall neglect, for thirty days after due notice, to pay any assessment upon a deposit note, the whole note may be collected, is a provision found in a New Hampshire statute; but it is the statute incorporating this insurance company. And

Jones *v.* Sisson.

the defendant, by becoming a member of the company, has sub
jected himself to the provisions of the charter, and of the by
laws adopted by the company.

The effect of such collection of the entire note is really only
to withdraw the credit given to a member who has proved re-
gardless of his obligation to pay an assessment, and change the
place of deposit of the amount of the deposit note from the
pocket of the defendant to the treasury of the company, to
ensure more prompt payment of his future assessments ; as the
money, when collected, is required to be held by the company
as trustee for the defendant's use, to be applied, so far as is
necessary, to pay assessments accruing from time to time, and
the balance, not required for that purpose, to be repaid, at the
expiration of the policy, to the person from whom it has been
collected.

2. It is then said that the action in such case should not be
an action on the note, but a special action on the case, setting
out all the facts necessary to show the liability to pay the whole
amount of the deposit note. This objection is not well founded
in fact. It is true that the declaration sets out the note, and,
had it stopped there, might have been obnoxious to the objec-
tion taken ; but it further proceeds to set forth in detail the facts
of an assessment, a demand thereof, and neglect to pay the
same, and the liability to pay the whole amount of the note
under the charter and by-laws of the company. The declara-
tion is, as it seems to us, sufficient in form to embrace the plain-
tiff's claim.

3. It is objected that this action, if for the whole note, upon
the ground of liability to pay the whole by reason of neglect to
pay an assessment thereon, should not have been instituted in
the name of the treasurer of the corporation, but in the name
of the directors. This is supposed to result from the provision
of the charter, § 9, wherein it is provided, that in case of such
default and neglect to pay an assessment, "the directors may
sue for and recover the whole amount of said deposit note."
We do not understand this to relate to the form of the action,
but to the authority to institute an action to recover the whole

note. It is to be done by their order, but not in their names as parties to the suit.

4. It is contended that the assessment was itself illegal, because the sum assessed upon the deposit notes includes not only an assessment to the amount of actual losses by fire that the company were then liable to pay, but also interest on money borrowed, probable losses by bad debts, and an allowance for collecting assessments, in the form of an abatement for prompt payment of the same.

The promise of the defendant, in his deposit note, is to pay the same "in such portions and at such times as the directors of said company may agreeably to their act of incorporation and by-laws require." The act of incorporation, § 6, requires it to be paid, "in part or the whole, at any time when the directors shall deem the same requisite for the payment of losses or other expenses." The seventh article of the by-laws authorizes the directors "to borrow from time to time such sums of money as may be required to meet losses; and in making the next assessment, the sums thus borrowed, the interest thereon, and all necessary expenses, shall be included and assessed."

No doubt the assessment must be limited to the legitimate objects declared in the charter and by-laws. But this will not prevent the directors from exercising a reasonable discretion in fixing the amount to be assessed. They may, we think, make a proper allowance for the deficiency that will result from insolvent members, making the assessments upon all members in proportion to the amount of their deposit notes. They may also properly include the necessary expenses of collection; and if, in their opinion, an allowance for prompt payment of the assessment to their treasurer directly will be more beneficial than to employ agents to collect these small sums thus assessed, they may make such an allowance, and consider that as a part of the expenses of collecting the assessments. If these allowances are reasonable, and consistent with the exercise of good faith on the part of the directors, they will not vitiate an assessment, made under a charter and by-laws such as exist in the present case.

Jones *v.* Sisson.

5. It is next objected that there was no publication of the assessment made by the directors, and no evidence that the defendant had proper notice of the same.

No particular mode is prescribed, in which such publication and notice of an assessment are to be made and given. It would be sufficient to have given actual notice to each individual assessed, through a circular, if seasonably given. Whether such notice was given to the defendant, is a question upon which the parties are at issue, and that matter must be passed upon by a jury, if there was any competent evidence to go to the jury upon that point. We think there was evidence proper to be submitted to the jury, tending to show such notice to the defendant; leaving to the jury to draw all proper inferences, and find as to the fact of notice. The facts testified to by Lang, as to the manner in which notices were made out and sent to the post office, is not alone sufficient to prove that the notices were deposited in the post office ; as the plaintiff, who is said to have carried a portion of the notices to the post office, was not called as a witness. But the proof as to notice does not rest here. The facts testified to by the plaintiff's attorney, as occurring at the time he made a demand upon the defendant for payment of the assessment, and the reason assigned by the defendant for not paying the same, are to be taken in connection with the other evidence, and submitted to the jury, who will pass upon the question, whether the notice of the assessment was given to the defendant.

The result is therefore that the exceptions taken by the plaintiff to the ruling of the court of common pleas must be sustained, the verdict set aside, and a new trial had.

*Exceptions sustained.*