FARMERS' MUTUAL FIRE INSURANCE CO. OF PALMYRA

*v.*

EDWARD B. KNIGHT.

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. INSURANCE—*power of mutual company to assess for surplus fund.* A mutual fire insurance company organized under a statute which empowers it to raise money by assessment for the payment of losses only, has no power to make an assessment to create a surplus fund for the payment of future losses.

2. SAME—*unauthorized assessment by mutual company may be disregarded by members.* An assessment made by the managers of an incorporated mutual fire insurance company largely in excess of an amount required to pay a loss, for which they are empowered by its charter to make an assessment, is void, and may be disregarded by the members.

3. SAME—*payment of illegal assessment does not work estoppel.* Violation by the managers of a mutual fire insurance company of the statute under which it is organized, in making assessments to provide for future losses, and payment of such assessments by a policyholder, will not estop the latter from questioning the validity of another assessment to pay future losses.

*Palmyra Ins. Co.* v. *Knight*, 59 Ill. App. 274, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lee county; the Hon. JOHN D. CRABTREE, Judge, presiding.

DIXON & BETHEA, and A. K. TRUSDELL, for appellant:

By the failure of the appellee to pay the assessment in question within sixty days after receiving notice thereof his policy was suspended, and on account of the fire during the time of the suspension he could not recover upon his policy. Charter of company, sec. 7; May on Insurance, sec. 555, p. 691; *Cove* v. *Insurance Co.* 18 Iowa, 425; *Nash* v. *Insurance Co.* 43 Me. 343; *Grand Lodge* v. *Besterfield,* 37 Ill. App. 522; *Hansen* v. *Knights of Honor,* 40 id. 216; *Traveling Men's Ass.* v. *Schauss,* 148 Ill. 312; *Hummell's Appeal,* 78 Pa. St. 320; *Rood* v. *Benefit Ass.* 31 Fed. Rep. 62.

This corporation had the right to provide for the mutual insurance of its members against loss by fire and for the prompt payment of its losses. Its charter, by its general terms and by necessary implication, gave it the power to make contracts with its members for the levying of the assessment in question, accumulating a sum to pay losses within ninety days after their occurrence. 2 Morawetz on Corp. secs. 672, 675; 1 id. secs. 317, 320, 322, 324, 344, 362, 365; Angell & Ames on Corp. sec. 271; 4 Am. & Eng. Ency. of Law, 215, 217; 1 Wood on Railroads, secs. 13, 151, 153, 169; 3 Parsons on Contracts, 533; *Jones* v. *Guaranty Co.* 11 Otto, 622; *Insurance Co.* v. *Foote,* 79 Ill. 368.

That part of section 7 of the charter which provides, "and when the just demands of any insurer in said company, or member thereof, shall exceed the amount of its available funds on hand, such sums as shall be necessary to pay the same shall, without unnecessary delay, be assessed by the board of managers on insurance," etc., is not a limitation upon the powers of the company, and was made for the benefit of the insured, and does not take away the powers conferred by other portions of the char-

ter and by contract of members. *Wheeler* v. *Chicago,* 24 Ill. 108; Cooley's Const. Lim. 74-80; *Commonwealth* v. *Insurance Co.* 112 Mass. 142.

Mutual companies, unless there is some express prohibition, have power to levy assessments for the purpose of paying future losses. Niblack on Mutual Benefit Societies, 310, 311; *Insurance Co.* v. *Belknap,* 9 Cush. 141; *Kelly* v. *Insurance Co.* 3 Wis. 229; 16 Am. & Eng. Ency. of Law, 65; 1 Biddle on Insurance, sec. 46; 2 id. sec. 935; *Insurance Co.* v. *Weed,* 28 Conn. 51.

Even if it be held that the charter of the company does not give the power to levy assessments to cover future losses, the facts in this case show that it has always been the custom of the company to make such levies and that appellee knew of the same and acquiesced therein, and he is therefore estopped from denying the legality of the assessment. Lawson on Usages and Customs, secs. 223, 248; Sedgwick on Const. of Statutes, 215, 218, 219, 226; *United States* v. *Railroad Co.* 142 U. S. 615; 2 Morawetz on Corp. secs. 623, 624, 630, 633; 1 id. sec. 498; 2 May on Insurance, secs. 552, 554; Angell & Ames on Corp. sec. 348; *Commonwealth* v. *Insurance Co.* 112 Mass. 142; *Insurance Co.* v. *Sortwell,* 8 Allen, 217; Bishop on Contracts, secs. 412, 457; 16 Am. & Eng. Ency. of Law, 44, 45; *Insurance Co.* v. *Keyser,* 32 N. H. 313; *Campbell* v. *Insurance Co.* 37 id. 35; 1 Wood on Railroads, sec. 169, p. 539, note.

The powers granted to this corporation by the legislature were of the kind known as ordinary, and not prerogative, and for that reason there is no good cause for construing the law strictly against the corporation. 1 Wood on Railroads, sec. 13.

R. S. FARRAND, and C. B. MORRISON, for appellee:

Conditions in a policy, the by-laws of an insurance company, and all species of contract or grant that provide for a forfeiture or suspension, must be strictly construed. Endlich on Int. of Statutes, sec. 343; *Railway Co.*

v. *Blanchard,* 35 Ill. App. 487; *Insurance Co.* v. *Miller,* 39 id.
640; *Morgan Park* v. *Gabon,* 35 id. 652; *Palmer* v. *Ford,* 70
Ill. 369; *Insurance Co.* v. *Storig,* 137 id. 65; *Insurance Co.* v.
*Walsh,* 54 id. 164; *Insurance Co.* v. *Pierce,* 75 id. 426; *Morris*
v. *Tillson,* 81 id. 607.

Assessments, to be binding, must be properly laid and
for a proper purpose, and if not, a failure to pay them will
not work a forfeiture or suspension.   Niblack on Mutual
Benefit Societies, secs. 277, 279, 280; May on Insurance,
secs. 67, 557; *Tobey* v. *Russell,* 9 R. I. 58; *Matter of People's
Fire Ins. Co.* 9 Allen, 319; Biddle on Insurance, secs. 936,
938; *Insurance Co.* v. *Gruse,* 49 Mo. 329; Bacon on Benefit
Societies, sec. 377; *Underwood* v. *Legion of Honor,* 66 Iowa,
134; *Insurance Co.* v. *Borden,* 57 Me. 286; *Insurance Co.* v.
*Turner,* 53 id. 226.

In making an assessment the managers act ministeri-
ally, and not judicially, and no presumption arises in
favor of the regularity of the proceedings.   *Insurance Co.*
v. *Gruse,* 49 Mo. 329; Niblack on Mutual Benefit Societies,
sec. 280; *Thomas* v. *Whallon,* 31 Barb. 177; *Insurance Co.* v.
*Fuller,* 14 id. 373; *Insurance Co.* v. *Schmidt,* 19 Iowa, 502.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the
court:

This is an appeal from a judgment of the Appellate
Court affirming a judgment of the circuit court of Lee
county, wherein Edward B. Knight recovered from the
Farmers' Mutual Fire Insurance Company of Palmyra,
Lee county, Illinois, judgment for $2464.10 on a policy of
insurance.   In the circuit court a jury was waived and
a trial had before the court, and after the evidence was
introduced various propositions of law were submitted
by the respective parties and passed upon by the court.
But it will not be necessary to set out in this opinion
those propositions and the ruling of the court upon them,
as the questions involved have been narrowed down to
a small compass, and will be found stated in appellant's

brief, as follows: "The chief question to be determined in this case is as to whether the said last assessment was a valid one, and in determining whether it was valid or not there are two questions to be decided. One is as to whether the company had power to levy the assessment, and another is as to whether, assuming that the company had not such original power, the appellee, Knight, was estopped from setting up such a want of power. The appellant claims that, in the first place, it had such power under ·its charter, and in the second place, that the appellee is estopped from denying such power."

The appellant corporation was organized under a special act of the legislature, approved February 15, 1865. (1 Private Laws of 1865, p. 647.) The first section provides that C. B. Thummell and twelve other persons therein named, "their associates, successors and assigns, are hereby created a body corporate, by the name and style of the Farmers' Mutual Fire Insurance Company of Palmyra, in the county of Lee, and by that name shall have perpetual succession, and may sue and be sued, may make all by-laws, rules and regulations that shall be necessary and convenient for the government of the said corporation, not inconsistent with the constitution or laws of the United States nor of this State, and generally do all and singular the matters which to them lawfully appertain to do for the well being of said corporation and the management of the affairs thereof." Section 2 provides: "That said corporation shall not hold any property except what may be absolutely necessary for the transaction of their corporate business, or such as shall be taken in security for or in payment of debts, nor shall any by-laws be repugnant to this instrument, the constitution of the United States or of this State." Section 3 provides "that the power of this association shall be vested in thirteen managers." Section 4 provides "that each insurer in or with the company shall

be a member thereto during the term of his or her policy, and no longer." Section 5 provides: "And the members shall, at such general meetings, pass all by-laws, rules and regulations necessary for the well governing of the affairs of the corporation, or vest the power so to do in the board of managers." Section 6 provides that the president and managers shall have full power, on behalf of said corporation, to make insurances against loss by fire on houses, barns or other buildings; on goods, wares and furniture ; on live stock, hay, grain and other agricultural products; on barns, stacks, etc. Section 7 provides: "It shall be lawful for said company to employ and invest all moneys received by them, and the profits thereof, in purchase of any ground rents or mortgages, or any loans or stocks of the United States or of this State; and no money shall be drawn from the funds of the said company for the purpose of making dividends or dividing profits, or for other purposes than first to defray the current or incidental charges of the corporation, and then for the purpose of such damages as any member of said company or insurer therein may justly be entitled to; and when the just demands of any insurer in said company or member thereof shall exceed the amount of its available funds on hand, such sums as shall be necessary to pay the same shall, without unnecessary delay, be assessed by the board of managers on insurances, each member to pay in proportion to the amount he has insured, and publish the same ; and all and every of the members of the company shall pay into the hands of the treasurer his, her or their proportionable rates within thirty days after such publication aforesaid; and if any member shall refuse or neglect to pay, as aforesaid, for the period of sixty days, his, her or their policy shall become suspended until payment shall have been made, and shall, notwithstanding, be liable to said rates pursuant to his, her or their covenant or agreement."

Under the authority of the charter the company adopted certain by-laws for its government, article 7 of which provides: "For ordinary farm risks the premium shall be at the rate of three dollars per thousand on the amount insured, with three dollars to cover the additional expense of examination and policy; and the liability of the assured to assessment to pay losses and expenses shall be the amount of insurance named in the policy. Each policy shall be what is called perpetual."

On the 10th day of August, 1892, Edward B. Knight, the appellee, applied to the company for a $4000 policy on certain property by him owned. The application contained the following: "That if a policy of insurance is issued to him upon the above described property he will faithfully abide by and observe all the conditions, rules, regulations and orders of the company contained in its charter and by-laws, and promptly pay, whenever called upon, his just share of the assessments made for the payment of losses by fire and lightning incurred at any time by any member of the company."

Upon receiving the application a policy was issued, which contained the following: "This policy witnesseth, that E. B. Knight having become a member of the Farmers' Mutual Fire Insurance Company of Palmyra, Lee county, Illinois, and having deposited with the treasurer of said company the sum of $15, is hereby insured by the said society for the sum of $4000, upon the following described property, situated in said Lee county: (Here follows a description of the property.) In consideration of above obligation of the said company the said Knight binds himself, and his heirs, executors, administrators and assigns, to comply with the constitution, rules, regulations and by-laws of said company."

On the 25th day of April, 1893, at a meeting of the board of managers of the company, it was ascertained from an examination of the books of the treasurer that there was a balance of $447 due one Johnson on. a loss,

and due the secretary of the company for money advanced, $643.08, making a total liability of the company of $1090.08. In order to meet the deficit an assessment of one-quarter of one per cent was made on all the property insured in the company. The assessment so made was sufficient to raise the sum of $7333.68. On the 9th or 10th of June, 1893, appellee received a notice of the assessment, which was as follows:

"*Mr. E. B. Knight, Jr.*—Your assessment is $10 on $4000 of insurance, to pay the loss of H. B. Johnson and to create a surplus fund to pay future losses. Rate of assessment, one-fourth of one per cent. By order of the board of managers. Please pay promptly at the Dixon Nl. Bank. The bank stamp will be a receipt for payment.        ELLWOOD HUGHES, *Sec.*"
   "Date, June 8, 1893.

Appellee, upon receiving the notice, refused or neglected to pay the assessment, and about sixty days after the first notice a second one was given to him, but he still declined to pay until the 19th day of October, when he offered to pay the assessment. This was, however, the day after his property was destroyed by fire, and it is claimed on behalf of the company that on account of the failure of appellee to pay the assessment, the policy, at the time of the loss, was suspended. On the other hand it is claimed that the assessment being so much in excess of the amount the company was authorized to raise, the assessment was void, and appellee was under no obligation whatever to pay the amount, upon notice or otherwise.

Under section 7 of the charter a member of the company is required to pay an assessment within sixty days after receiving notice, and a failure to make payment within the time specified works a suspension of the policy. As appellee therefore failed to make payment of the assessment within the time prescribed, if the action of the board of managers in making the assessment was authorized by law, then it is clear he could not recover. Whether

the board was authorized by law to make the assessment is the principal question presented by the record.

This insurance company having been created by an act of the legislature, it is a clear proposition that its board of managers has such power, and such only, as was conferred by the act under which it was organized. The power of the board of managers to make and collect assessments on its members is derived from the charter, and from that alone. Section 8 of the charter provides: "Every member of this company who shall sustain any loss by fire shall give notice in writing, within fifteen days, to the president or secretary of said company, who shall appoint a committee of three from the board of managers, who shall assess the damages and report the same to the board of managers * * * within two weeks from the time of receiving notice of their appointment, and the board of managers shall, with all convenient expedition after receiving such report and ascertaining the sum which said party shall be lawfully entitled to, make provision and payment as herein specified." By going back to section 7 the manner in which the money can be collected from the members is pointed out. It declares: "When the just demands of any insurer in said company, or member thereof, shall exceed the amount of its available funds on hand, such sums as shall be necessary to pay the same shall, without unnecessary delay, be assessed by the board of managers on insurances, each member to pay in proportion to the amount he has insured, and publish the same; and all and every of the members of the company shall pay into the hands of the treasurer his, her or their proportionable rates within thirty days after such publication." Under this provision, when a member sustains a loss the board of managers are first to determine what amount of money the company has on hand, and in the event that the loss exceeds the amount of available funds on hand a sum sufficient to pay the loss may then be assessed; but if

there should be a sum sufficient of available funds in the treasury to meet the loss, it would then be the duty of the board to devote such sum to the payment of the loss before resorting to an assessment. As respects the amount the board of managers should raise in case the available funds on hand are not sufficient to pay the loss, section 7 authorizes only such sum to be raised as shall be necessary to cover the loss, and we find no provision of the act which confers power to raise more money by assessment than should be required to pay the loss. Nor do we find any provision in the act which authorizes money to be raised for any purpose other than the pay-. ment of losses. Indeed, no word or expression in the charter is to be found which would indicate that the legislature ever intended to invest the insurance company with power to build up a surplus fund to pay future losses. The purpose of the act, as shown by its different provisions, was to authorize the organization of a mutual insurance company; a company with little or no capital or property of any description; a company clothed with power, when a loss occurred, to assess the various policyholders a sum which would, when collected, be sufficient to pay the member who had suffered loss by fire the amount of such loss. If the legislature had intended that this corporation should have power to create a large fund and keep it on hand by making assessment on members, surely some provision manifesting such intention would have been incorporated in the charter. But no provision of that character is to be found.

*Rosenberger, Light.& Co.* v. *Washington Fire Ins. Co.* 87 Pa. 208, is somewhat similar to the case under consideration. There one section of the charter provided "that in case of loss by fire the managers shall have power to levy and assess the amount of said loss upon the persons insured in this corporation, *pro rata,* according to the amount or value of property insured by each, respectively." In the decision of the case the court, among other

things, said: "Nothing can be more certain than that
the managers had no authority to make assessments in
anticipation of losses. The words of the charter and
by-laws need no interpretation. They are too explicit
to admit of doubt, and the contract being consistent
therewith is governed by them. Indeed, the latter con-
tains no more than is necessarily implied in the former,
for the expenses of the company must be borne by its
members. They are, as members, subject to liabilities
and entitled to privileges. A member may participate
in its benefits, is presumed to know its rules and regula-
tions, its books are evidence against him, and he shall
bear his proportion of burdens. His corporate rights
may be subject to the control of the corporation, but his
rights as a party insured rest on the contract. Assurer
and assured alike are bound by the charter, and neither
can do what it does not authorize, nor can either change
a by-law so as to modify the contract without the other's
consent.—*Insurance Co.* v. *Conner*, 5 Harr. 136." See, also,
*Mutual Fire Ins. Co.* v. *Gackenbach*, 115 Pa. 496; *New York
Mutual Fire Ins. Co.* v. *Bowden*, 57 Me. 286.

Other cases where similar statutes have been consid-
ered might be cited, but in the construction of a statute
so much depends on the peculiar language of the act
under consideration that reference to cases construing
statutes somewhat different aids but little in arriving at
a proper decision in a case of this character.

Assessments may be made for the purposes provided
for in the charter and by-laws, but the managers of an
incorporated company have no power to go beyond the
powers conferred by the charter. Where a loss occurs
the managers may exercise a reasonable discretion in
determining the amount necessary to be raised. There
will always be more or less expense in the collection of
an assessment, and there may be insolvent members from
whom collections cannot be made. These and other like
matters are proper to be considered by the managers in

fixing the amount of an assessment. But where the managers go beyond all reasonable limits and make an assessment largely in excess of the amount required to pay the loss, as was done in this case, the assessment will be void and may be disregarded by the members.

As to the second point relied upon, that it had been the custom of the company to levy assessments to provide for the payment of future losses and that appellee was estopped from denying the validity of such assessments, but little need be said. It may be conceded, as suggested in the argument, that when the meaning of a statute is doubtful the usage of the parties working under the statute may be considered by the court in determining the meaning of the statute and the proper construction to be placed upon it. But we do not think that principle has any bearing on the question here involved. The evidence introduced on the trial tends to prove that the managers of the insurance company, for several years, in making assessments, did not adhere to the statute, and that in a number of cases more money was raised than was at the time required to meet losses. But these violations of the statute did not ripen into a right; nor are we aware of any principle which would preclude a policyholder of the insurance company from calling in question the validity of an assessment, although he may have previously paid assessments which did not conform to law. We do not think the doctrine of estoppel applies to such a case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part.