# THE MUTUAL FIRE INSURANCE CO. OF BALTIMORE COUNTY *vs.* MARTIN L. JEAN.

*Mutual Fire Insurance Company—Members Liable Only for Proportionate Share of Losses—Mutuality—Invalid Assessment.*

In a mutual fire insurance company each member, to the extent of his premium note, insures every other member who is such during the period of his membership, and is in turn insured by them, and he cannot be called upon to pay more than his proportionate share of any loss, nor can he be made to contribute to the payment of a loss which occurred before he became a member.

This rule of mutuality and fairness is violated when the ascertainment and collection of the proportion due by each member, who was such at the time of a loss, is deferred for any length of time, since the assessment when afterwards made must omit all those members who subsequently ceased to be such and whose premium notes were surrendered, and consequently increases the proportion of the continuing members.

The charter of a mutual fire insurance company required that whenever a loss shall occur, the amount to be contributed by the members to pay the same shall be ascertained by the directors at their next meeting, the members notified thereof, and steps taken for its collection. In this case the directors of the company made no assessments but borrowed money to pay losses and ten years afterwards assessed defendant's premium notes to pay the company's indebtedness for the money so borrowed. *Held*, that this assessment is invalid because not made in conformity with the charter, and because a large number of members who were liable for such losses became discharged therefrom by leaving the company, thus increasing the proportion to be collected from the remaining members.

When a mutual fire insurance company borrows money to pay losses instead of making assessments therefor, it cannot assess the premium note of a member who became such after the losses were incurred to repay any part of the money so borrowed.

Appeal from the Court of Common Pleas, (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William S. Bryan, Jr.*, (with whom were *William Penrose* and *Robert F. Stanton* on the brief), for the appellant.

*James P. Gorter*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is a suit by the Mutual Fire Insurance Company of Baltimore County to recover assessments upon two premium notes given by Martin L. Jean in consideration of two policies of insurance against fire issued to him by said insurance company. The first note was made April 26th, 1889, and is for $435.00 payable on demand, with interest payable annually, and the second was made March 3rd, 1899, and is for $14.00 payable on demand, with interest payable annually. Each note contains a clause providing that it shall be subject to such assessments as the company may at any future time prescribe for losses sustained by fire. The annual interest on these notes at six per cent, the rate fixed by the directors, was regularly paid up to March 1st, 1900, that date being the beginning of the fiscal year of the company, which was incorporated in 1849, and continued to do business until April, 1899, without making any other assessments than those which embraced the assessments here in controversy. It appears from the record that as far back as 1887 the losses from fire had been numerous and heavy, and that all losses as they occurred were paid as far as possible out of income, and when this was inadequate, that the deficiency was paid out of money borrowed by the company upon its notes endorsed by the president and secretary, and a majority of the executive committee. On March 1st, 1889, this borrowed money amounted to over $30,000, and in 1899 to near $48,000.

On April 28th, 1899, the directors passed a resolution setting forth the existence of a heavy indebtedness incurred to pay fire losses thus accumulated, and laying the following assessments upon the premium notes held by the company: Upon all notes dated before January 1st, 1897, a rate of 16¼ per cent. Upon all notes dated between January 1st, 1897, and January 1st, 1898, a rate of 14¾ per cent. Upon all notes dated between January 1st, 1898, and January 1st, 1899, a rate of 8½ per cent, and upon all notes dated between Jan-

uary 1st, 1899, and April 1st, 1899, a rate of 4 per cent. These assessments aggregated $48,611.25, and the assessment upon the defendant's first premium note amounted to $70.69 and that upon the second note to 56 cents.

The declaration set forth all the facts necessary to show the obligation claimed to result from these assessments, and the defendant filed six pleas, five of which were in some form denials of any obligation to pay the amounts claimed, or any part thereof, as the result of these assessments, and the sixth was not indebted as alleged. Issue was joined on these pleas and the case was tried before the Court sitting as a jury. Upon the conclusion of the plaintiff's testimony, the defendant offered two prayers, the first, in the usual form, declaring a want of legally sufficient evidence to entitle the plaintiff to recover, and the second declaring a want of legally sufficient evidence to show any valid assessment by the directors, binding upon the defendant, both of which were granted. The plaintiffs excepted to this ruling and has brought this appeal.

Section 4 of plaintiffs' charter makes every premium note taken a lien on any real estate insured in consideration of such note, and provides that it shall be held and deemed as a mortgage thereon, and that upon refusal to pay the same or any part thereof, whenever demanded by the president and directors, may be collected as in the foreclosure of a mortgage. Section 7 requires the directors " *whenever* a loss may occur which the company is liable to pay, to cause *at the next* meeting," an accurate statement to be made of the proportion or sum to be contributed by each member to make good such loss, and to notify the members of the same ; and upon default by any member in paying such sum within sixty days from such notice, to file such statement with the Clerk of the Circuit Court in the county in which such defaulting member resides, and to cause execution to issue therefor in the same manner as if judgment had been rendered for the same with all costs incident thereto. Section 9 of the by-laws, adopted in pursuance of the charter, provides that every person insured shall become a member, and that each shall be bound to the

others to make good their proportionate amount of losses by fire, and that if there is not a sufficient available fund in hand, the deficiency shall be supplied by an assessment of such per centage on the premium notes as the board may direct. These are the only provisions of the charter or by-laws we deem it necessary to notice as the plaintiff has, for some reason, preferred to sue for these assessments, rather than resort to any special remedy provided by the charter.

The charter, constitution, and by-laws, the policy and the premium note, taken together, in each case constitute the contract of insurance. The company is in fact, what it's title declares it to be, a mutual insurance company. Each member, to the extent of his premium note, insures every other member who was such when he became a member, or who becomes, and continues to be, such, during his own membership; and he is in turn insured by every such member to the extent of his premium note. The simple, inherent, and imperative characteristics of this contract are mutuality and equality. No one can be called on to pay more than his proportionate share of any loss, nor to pay that proportion upon any other conditions than those prescribed in his contract; and no one can escape the payment of such proportion, if the provisions of the charter, constitution, and by-laws are observed by the directors, except in the rare cases of the worthlessness of the lien acquired on the property insured, by virtue of the premium note. Strict provision is made for the prompt declaring of an assessment whenever a loss occurs, and there is no adequate fund in hand, and ample power is given for its enforcement. Should such an insolvency occur as is mentioned above, it would only operate to increase the proportion of the solvent members, and would come clearly within the principle of mutuality and equality contemplated by the contract.

The appellee contends that the assessment made is invalid for three reasons:

1st. That he is called upon to contribute to the payment of lossess of more than $22,000 incurred before he became a member.

2nd. That even if he were liable for such losses, this assessment subjects him to a liability much greater than his just proportion under his contract.

And 3rd. That in *making* the assessment the directors have departed from the method prescribed by the charter.

We will consider first, the last of these objections. The 7th section of the charter already referred to, puts upon the directors the absolute duty, at the first meeting after notice of any loss, accurately to determine each member's proportion of such loss, and to take prompt steps for the collection of such proportion. Without such requirement the rule of mutuality and equality cannot be enforced, since if the ascertainment and collection of the proportion of each member who was such at the time of the loss, is either indefinitely deferred, as in this case, or neglected for any considerable period, it is obvious that such deferred assessment must omit all those members who have in the meantime ceased to be such, and whose premium notes have been surrendered as authorized by the charter. This is a wrong to the continuing members, nor can that wrong be righted by including in the assessment those who have become members since the loss occurred, since it is equally a wrong to them, to subject them to losses which occurred before they were insured. The appellee could not have been rightfully assessed the day after he became a member, for losses incurred one year, or even one day, before he became a member, and there is no better ground for assessing him now to reimburse the company for losses so incurred, though paid during his membership, and out of money borrowed by the company for that purpose. In a mutual company, the members are entitled to a *pro rata* distribution of the net profits at the end of each year, or quarter, according to the rule of distribution. In a successful going concern of this character, the receipts usually exceed the disbursements, including losses; consequently it is not often that an actual assessment is required, since ordinarily each member's proportion of net profits exceeds his proportion of losses for the same period, and thus the assessment required by the charter, as

well as its collection, is effected a by simple system of credits
and charges.    If at any time, by reason of prior losses, the
amount to the credit of each member, should be less than his
proportion of a subsequent loss, an actual assessment for such
deficiency would be required by the terms of plaintiff's char-
ter.    For these reasons, we think the directors in making this
assessment departed from the method prescribed by the char-
ter ; that this departure resulted in discharging large numbers
of members who have in the meantime left the company with-
out paying their proportion of losses for which they were
liable, and which proportion is by this assessment imposed
upon the present members.    By such an assessment we do
not think any legal obligation was imposed upon the appellee.
This conclusion is sustained by the authorities.    In 16 *Am.
& Eng. Ency. of Law*, p. 66, 1 ed. it is said :  "Assessments
must be made in strict conformity with the provisions of the
by-laws, and cannot be enforced if made otherwise."    This
text is sustained in *Slater Mutual Fire Insurance Co.* v. *Bars-
tow*, 8 R. I. 343, even though a more equitable method was.
adopted than that provided by the charter.    In *Tobey* v. *Rus-
sell*, 9 R. I. 58, it was held that "where a loss has been paid
out of money hired by the company without making an as-
sessment therefor, it may thereafter properly make an assess-
ment *upon the parties whose policies were in force at the time
of the loss.*"    But in *Victoria Mut. Fire Ins. Co.* v. *Thompson*,
32 U. C. C. P. 476, it was held that an assessment was not
valid when made to pay a note of the company for money
borrowed *before the maker of the premium note became a* mem-
ber ; and in *Victoria Mut. Fire Ins. Co.*, 9 Ont. App. Rep. 620,
it was held that no part of an assessment can be recovered
where it was partly invalid, and the notice was for the assess-
ment as an entirety.    So in *Marblehead Mutual Fire Ins. Co.* v.
*Hayward*, 3 Gray, 208, it was held that if some of the mem-
bers who were liable to assessment, be intentionally omitted,
the assessment is void as to the rest, even though accompanied
by a computation of the liability of those omitted with the
intent to assess them in future, and we think the neglect to

make an assessment for many years, during which hundreds of members liable to assessment are allowed to withdraw, and to cancel their premium notes, is as much an intentional omission to include them in the assessment, as if they were omitted deliberately while continuing to be members.    In *New England Fire Ins. Co.* v. *Belknap*, 9 Cush. 140, it was said that computations for assessments need not be made upon the occasion of each loss, but may be made upon a rule that will approximate to it as near as is practicable and reasonable ; and the same, substantially, was said in 3 *Gray, supra ;* but in *Peoples Mut. Fire Ins. Co.* v. *Allen*, 10 Gray, 297, it was held that several months delay in making an assessment was sufficient to make it invalid.    In the case before us there has been a delay of ten years since defendant became a member.

Referring to the first objection, it clearly appears from the record that this assessment requires the appellee to contribute to the payment of very large losses incurred before he became a member.    An analysis of the company's statement for the year ending February 28th, 1889, found on pages 14 and 15 of the record, shows that the company at that time owed over $30,000 borrowed money, with which losses had been paid, it being deemed by the directors wiser to borrow money for this purpose, trusting to future increased earning for repayment, than to make an assessment.    But this hope was not realized and it appears from the record that of this $30,000, more than $22,000 has been since carried, and is embraced in the assessment now made.    We can, upon principle, see no just ground upon which the appellee can be required to contribute to these losses.    In 16 *Am. & Eng. Ency. of Law*, p. 37, 1st ed., it is said that members are not liable for losses occurring before the beginning, or after the termination of the contract of membership, and it was so distinctly held in *Peoples Fire Ins. Co.* v. *Hartshorne*, 90 Pa. St. 465; and in *Commonwealth* v. *Mass. Mutual Fire Ins. Co.*, 112 Mass. 116; also in *Great Falls Mut. Ins. Co.* v. *Harvey*, 45 N. H. 292; *Farmers Mut. Fire Ins. Co.* v. *Chase*, 56 N. H. 341; *Manlove* v. *Bender*, 39 Ind. 371; *Evarts* v. *United States Mut. Acc. Assn.*, 40 N. Y. S. R. 878,

and in *Ionia, Eaton and Barry Farmers Mut. Fire Ins. Co.* v. *Ionia Circuit Judge*, 100 Mich. 606, as well as in numerous other cases. To the last cited, as reported in 32 L. R. A. 481, there is appended a very full and valuable note upon the liability of members of mutual fire insurance companies.

Coming finally to the second objection, it is quite clear we think, even if the appellee could be required to contribute on some basis to these prior losses, that he is by the assessment made, required to contribute an undue proportion ; first, because of the failure to credit upon his premium note before assessing it, $59.50 for cancelled items, and second, because of the release of the numerous policy holders who have ceased to be members between 1889 and 1899, and who are omitted from this assessment. Exact mathematical accuracy, either in computing the amount to be raised by an assessment, or in ascertaining the basis of each members assessment, and perhaps the inadvertent omission of these comparatively small credits, might be regarded as coming within the rule of *de minimis*, but the other objection cannot be thus disposed of. The testimony of the secretary shows that in 1887, heavy losses were occurring, and that the premium notes then in force amounted to $593,000, since which time this amount has almost steadily decreased, being $329,000 in 1897, and only $332,000 in 1899, when this assessment was made. It is apparent therefore that had the proper assessments been made from time to time, within the rule as to reasonable time, established in 9 Cush., and 10 Gray, *supra*, the appellee would not now be called on to pay much more than half of the present assessment.

If all the losses for which this assessment was made, had occurred before the last official examination of the company's affairs made by the appellee as a member of an examining committee, it may be that he could be regarded as acquiescing in the method pursued, and as bound by such acquiescence, but we are not to be understood as so deciding. But his last examination was made in 1893. Since then six years have elapsed, and however his participation in the examination of

the affairs up to 1893, might affect him as to losses prior to that time, it can in no way affect him as to losses since that time.

In *American Ins. Co.* v. *Schmidt*, 19 Iowa, 502, it was held " that with respect to a premium note in a Mut. Fire Ins. Co., a member stands on a different footing to that assumed in his contract of membership ; accordingly he is not chargeable with notice of the acts of the directors of the company in a suit on a premium note, so as to deprive him of the benefit of any defense."

We can discover no error in the ruling of the learned Judge.

> *Judgment affirmed with costs above and below.*

(Decided January 15th, 1903.)