THE MUTUAL SECURITY COMPANY *vs.* SIDNEY BLU-
MENTHAL AND COMPANY, INCORPORATED.

Third Judicial District, New Haven, January Term, 1913.

PRENTICE, THAYER, RORABACK, WHEELER and BENNETT, Js.

Unless otherwise provided in its charter, an assessment of the policy-
holders of a mutual insurance company may be made within a
reasonable time after the expiration of their policies, to meet losses
sustained while they were in force; for if the company were re-
quired to levy the assessment during the lifetime of the policy, the
right of assessment would be of but little value or benefit.

An assessment made several years after the expiration of a policy may
be within a reasonable time, if the interval has been occupied in
negotiations for settlement and in protracted litigation.

Whether an assessment was made with reasonable promptness or not
is a question of fact dependent upon the circumstances of each
case.

An assessment by the president and directors is in legal effect one by
the "board of directors"; and it is so even technically, if the presi-
dent is a director.

It is proper to include in such an assessment a sum to cover the cost of
its collection and the expenses incident to the adjustment of the
losses.

The amount so included must be a reasonable sum and the vote of the
directors is prima facie evidence of its reasonableness.

The aggregate amount due under two policies may be included in a
single assessment, but the method of making up such an assessment
is open to investigation and explanation.

The plaintiff insurance company had in previous years returned a por-
tion of the premiums not· required to pay losses, and the total
amount so refunded would, if now on hand, have been sufficient to
cover the losses in question. *Held* that whether such returns were
legal or not, the action of the company in making them was not
available as a defense to an assessment made in accordance with
the plaintiff's charter and the terms of the defendant's contract.

Argued January 29th—decided April 17th, 1913.

ACTION to recover of the defendant the amount of an
assessment against it made by the plaintiff to pay for
losses incurred by it upon its policies of "strike insur-
ance" so-called, brought to the Superior Court in New

Haven County and tried to the jury before *Williams, J.,* who directed a verdict for the defendant, from the judgment upon which the plaintiff appealed. *Error and new trial ordered.*

· *Terrence F. Carmody* and *Walter E. Monagan,* for the appellant (plaintiff).

*Edward A. Harriman,* for the appellee (defendant).

WHEELER, J. The plaintiff appeals from the refusal of the court to direct a verdict in its favor and for the direction of a verdict for the defendant. The plaintiff is a mutual insurance company authorized by its charter (14 Special Laws, p. 181) to insure against loss or damage from the interruption or suspension of business by reason of strikes, at such rates and for such terms as it may determine; and it may require the further agreement to pay such sum or sums as may be assessed against each policy-holder to pay for losses or expenses accruing during the term of the policy, not exceeding five times the amount of the cash premium of each policy.

The plaintiff issued to the defendant a policy of insurance for twelve months from June 1st, 1906, in consideration of which it paid a premium of $800, and further obligated itself to pay all sums assessed on the policy by the president and directors in conformity with its charter and by-laws.

The plaintiff, on May 1st, 1906, issued to the Buffalo Forge Company its policy of insurance against loss from strikes, and under it the Forge Company on December 1st, 1909, recovered judgment for $29,449.49 for losses suffered by it from strikes between May 1st and November 1st, 1906. The Buffalo Steam Pump Company also recovered upon a similar policy issued to

it for loss from strike accruing between the same dates. The total loss on both policies to July 16th, 1910, was $33,000.

The president and directors, on August 16th, 1910, voted to levy an assessment to pay said several sums, with interest at the rate of six per cent. from July 16th, 1910, and further found that the expenses incident to the adjustments of said sums so due and of collecting and enforcing the assessments so made were reasonably estimated at $5,000, and then voted an assessment against each policy-holder for a sum equal to twenty-five per cent. a month of the premiums on his policy. The policy of defendant which was assessed expired June 1st, 1907. The vote of assessment was on August 16th, 1910.

The main ground for the defendant's contention that this assessment was void, is because it was made after the expiration of the policy and after an unreasonable time. This claim conflicts with the purpose of the assessment provision of mutual insurance. Premiums in stock companies are fixed sums calculated upon a basis of payment of the losses and expenses of the business and providing a surplus for a reserve and for profits. In a mutual insurance company the members are at the same time insurers and insured. Premiums may be, as in this case, partly in cash and partly in the right, arising out of the agreement in the policy, to levy assessments to meet actual losses. The assessments are thus in reality deferred premiums based on actual rather than on probable loss. This assessment obligation of the policy-holders constitutes a guaranty fund for the protection of the insured against loss suffered by him. Unless the right to levy assessments to meet accrued losses against those policies in force during the period of loss is preserved, the protection of the contract is taken from the insured and the guarantee fund de-

stroyed upon which the safety of this system of insurance rests, and without which the insolvency of the company would be ultimately inevitable.

The charter intended, and the policy intended, that the assessment would provide a fund to meet the losses accruing from strikes. A limitation of the time of assessment to the life of the policy would take away a great part of the protection afforded by the assessment right. The defendant does not claim that a mutual insurance company, such as the plaintiff, may not, if duly authorized, make contracts of insurance with its members extending their liability beyond the date of membership; its claim is that the plaintiff's right to assess is limited to the period covered by the life of the policy. The right of assessment is governed by the charter, and the defendant's liability to pay an assessment by its contract of insurance made in conformity to the charter. There is no specific limitation in the policy as to the time when the assessment may be made. To read into the policy a limitation to the period covered by the policy, is to interpret it counter to the intention of the parties. Membership terminates with the policy, and the defendant argues that all obligations created by the policy cease with it. This argument, the plaintiff points out, confuses the incidents arising from the contract of insurance with those arising from the membership of the policy-holder. Membership carries with it no obligations to be met by assessments arising out of losses before the inception of the policy, nor does it impose obligations arising after the policy has terminated. Under this contract of insurance, the policy-holder remains liable only for those losses which accrue during the life of the policy. When the contract begins, the liability thereunder begins; and, when it ends, the liability for future losses can never attach. The liability of each policy-holder for a loss

accruing during the life of the policy arises when the loss occurs and continues until it is paid, and may be satisfied, if needs be, by an assessment duly made within a reasonable time. It might not infrequently be impossible to adjust a loss and make the assessment within the life of the policy. In such cases, under the defendant's construction of this policy, no valid assessment could be levied since the membership has ceased and the policy terminated. Thus losses which accrued during the life of the policy, and which might be met by assessments laid in all other respects within the contract, must remain unpaid because the assessments are levied after the policy has matured. The security of the assessment privilege would be greatly minimized, and the object of its incorporation in the contract largely imperiled, if assessments could not be levied upon policies after their termination. Contracts for a limited period, whether for insurance, rental, or otherwise, do not by their termination avoid liabilities accruing during their life. We cannot sanction the defendant's claim that the language of this policy limits the right of assessment to the period of membership.

The policy does limit the life of the lien provided against the property of the policy-holder to the term of the policy. Some definite period must be fixed for the life of the lien, otherwise contracts of this character would not be entered into; and the term of the policy was selected perhaps because most assessments would be made and collected within this period.

Again, it is said the policy provides for the payment of "such sums as may be assessed against each policy-holder," and, after the termination of the policy, the defendant was no longer a policy-holder. The obligation for the loss accrued against each policy-holder during the period of the loss, and his designation as a policy-holder is a convenient and proper way of naming

him. The right of assessment, it will be noticed in § 6 of the charter, is not confined to assessments against members, or for losses accruing during membership, but extends to assessments against each policy-holder for losses accruing during the term of each policy.

We need not follow the defendant in its discussion of the situation arising where some policies are issued under the fixed rate plan and some under the assessment plan, since only one form of policy was in fact issued by the plaintiff, and that of the form of that issued to the defendant.

The authorities cited by the defendant do not, as a rule, support its contention. The cases holding that the right of assessment terminates with the membership are cases of benefit associations, or where the charter or contract of insurance in terms limits the right of assessment to the period of membership. The principles governing assessments levied by mutual insurance companies is satisfactorily and accurately stated in *Provident Mutual Relief Asso.* v. *Pelissier*, 69 N. H. 606, 608, 45 Atl. 562: "When the defendant took his membership certificate he entered into an absolute undertaking to pay the assessments specified in the first section, so long as he remained a member of the association. . . . The defendant's second contention is, that he is not liable for assessments levied after his membership ceased. It is hardly necessary to say that this contention cannot be sustained. The obvious test of liability is the time when the losses occurred upon which the assessments were made. The termination of his membership cut off the defendant's liability as to future losses, but, as before stated, it in no way released him from future assessments for the payment of losses then existing." *Peake* v. *Yule*, 123 Mich. 675, 680, 82 N. W. 514; *Ionia, E. & B. F. M. F. Ins. Co.* v. *Circuit Judge*, 100 Mich. 606, 59 N. W. 250; *Farmers*

*Mutual Fire Ins. Co.* v. *Knight,* 162 Ill. 470, 480, 44 N. E. 834; *Vandalia Mutual County Fire Ins. Co.* v. *Peasley,* 84 Ill. App. 138, 145; *Commonwealth* v. *Mechanics Mutual Fire Ins. Co.,* 112 Mass. 192, 194; *Planters Ins. Co.* v. *Comfort,* 50 Miss. 662, 671; *Mutual Fire Ins. Co.* v. *Jean,* 96 Md. 252, 258, 53 Atl. 950; *Tobey* v. *Russell,* 9 R. I. 58; *Smith* v. *Bell,* 107 Pa. St. 352; 2 Cooley, Briefs on Ins. p. 951; Richards on Ins. (3d Ed.) § 364; note to 32 L. R. A. 487.

The parties argue that, in the absence of a specification of the period in the contract, the assessment must be levied within a reasonable time. The defendant incorrectly applies the proper rule to the facts of this case. The losses were followed by negotiation for adjustment of the liability. Disagreement resulted in protracted litigation. The judgment rendered was on appeal affirmed July 12th, 1910, and the assessment levied August 16th, 1910. Whether the assessment has been made with reasonable promptness is a question of fact dependent upon the circumstances of each case, and never can be a question of law unless those facts point to one necessary and logical conclusion. In view of the protracted negotiation and litigation following the loss, it cannot be held, as matter of law, that the levy of this assessment was not made within a reasonable time; and, upon the facts of record, it ought to be held that it was levied within a reasonable time.

The claim that this assessment was void, since the policy provided for an assessment by the president and directors instead of by the "board of directors," as provided for by the charter and by-laws, was characterized in the decision upon the demurrer as technical; in view of the admitted fact that the president was also a member of the board of directors, the objection did not possess the merit of being technically accurate.

The assessment is claimed to be illegal since it in-

cludes a sum for expenses. It was reasonable and proper to include in the assessment an estimated sum to cover the cost of collecting the assessments made against the policy-holders and the expenses incident to the adjustment of the amount due the Forge Company. The amount so estimated must be a reasonable sum, and the vote of the directors is prima facie evidence of its reasonableness. *Vandalia Mutual County Fire Ins. Co.* v. *Peasley,* 84 Ill. App. 138; *Farmers Mutual Fire Ins. Co.* v. *Knight,* 162 Ill. 470, 480, 44 N. E. 834; *Jones* v. *Sisson,* 72 Mass. (6 Gray) 288; *Buckley* v. *Columbia Ins. Co.,* 92 Pa. St. 501; 22 Cyc. 1424; 2 Cooley, Briefs on Ins. p. 951; note to 32 L. R. A. 487. The assessment was not unequal, and was made "ratably upon the basis of the cash premiums paid." Charter, § 6. The cash premiums referred to are those provided for in the policies and not the net premium after the deduction of the refunds.

The loss for which this assessment was levied was for two strikes occurring between May 1st and November 1st, 1906. The defendant held two policies; No. 233 was in life for one month of the period of loss, and No. 355 was in life for five months of the loss. One sixth of the total loss thus accrued during each month of the six covered by the strikes. The secretary was instructed by vote of the directors to prepare a pro rata assessment on the policy-holders whose policies were in force during the strikes. The directors subsequently, by vote reciting the names of the policy-holders, the numbers of their policies, and the amount of their premiums during the period of said strikes, duly voted, as an assessment against said policy-holders, certain sums. The total assessment as made up was one hundred and fifty per cent. of the premium on each policy during the period of the loss; that is, twenty-five per cent. during each month of the loss of the premium on the policies

in existence during this period. The policies in force each month were assessed for the losses of that month to the amount of twenty-five per cent. of the premium thereof. Policy 233 covered one month of the loss and its assessment was one sixth or twenty-five per cent. of its premium, viz: $200; policy 355 covered five months of the loss and its assessment was five sixths or one hundred and twenty-five per cent. of its premium, viz: $1,000. The assessment vote merely recited the number of these policies, the name of each policy-holder, and the total of the assessment against each policy-holder. Against the defendant was set the combined amount due under each of said policies. The defendant insists that this assessment was for a single sum upon two distinct and consecutive policies, and therefore, since the amount of the loss accrued partly during the term of one policy and partly during the term of another policy, it was void. The theory of the defendant seems to be that the method of making up the assessment was not open to explanation; the sum assessed was an entirety, and hence was an assessment on policy 355 for losses that accrued before its inception. We think the trial court properly permitted the plaintiff to show how this assessment was made up, and that the inclusion of the entire amount due from a policy-holder under two policies in a single assessment was an orderly and simple method of making the assessment for each. It is not necessary to make separate assessments for the proportionate amount of loss levied against each policy. It is sufficient if the assessment for each loss for the policy-holder liable be equal. If occasion arises, its manner of making may be shown. In this case the plaintiff is not seeking to recover the $200 assessment on policy 233, but the $1,000 assessment on policy 355. "For every loss, however small, the company could not be required to make a separate assessment upon their

members." *New England Mutual Fire Ins. Co.* v. *Belknap*, 63 Mass. (9 Cush.) 140.

The defendant further contends that the assessment was legally unnecessary, since the plaintiff had paid to its policy-holders, in different years, refunds of premiums sufficient to have paid these losses, and that these refunds should have been retained and are recoverable and therefore an asset of the plaintiff, for which the directors are personally responsible. When the assessment was levied, the plaintiff was without funds to meet the losses for which the assessment was levied. Under its contract, the defendant was liable for all assessments made in conformity to the charter. This assessment was so made, and the insured was entitled to prompt payment of loss. If it were true, a point we do not decide, that these refunds were illegally made and are recoverable from the policy-holders receiving them or the directors improperly voting them, that is no ground for declaring the provision of the contract ineffective which gives to the insured protection against loss through assessments levied upon the policy-holders. If the position of the defendant were accepted, it might be impossible to collect the funds from the policy-holders to whom the refunds had been made and from the directors who had made them; and, if they were responsible, collection might follow years of litigation. It was never intended by this contract of insurance to place the insured suffering loss in so insecure a position. Moreover, it would in any case seem inequitable to permit the defendant, after profiting by the receipt of the refunds, to complain of their illegality.

The trial court erred in directing a verdict for the defendant.

There is error and a new trial is ordered.

In this opinion the other judges concurred.